DAY & *al. vs.* STETSON.

All ferries set up in this State since the statute of 7. *W.* 3. in 1695, derive their authority solely from the license of the Sessions.

The person keeping any such ferry has no vested interest therein, beyond the public control ; the franchise itself not being granted by the Sessions, but only the right to receive a fixed compensation for certain services, when performed.

The Sessions may therefore license as many ferries at the same place, as may suit the public convenience.

The delegation of powers to the Sessions does not restrain the legislature from directly interposing, whenever the public exigencies may require.

A horse-ferry is so far a work of public interest as to justify the taking of private property for its establishment, by paying compensation to the owner.

The private statute of 1830, *ch.* 89, constituting *T. P. S.* " and his associates " a corporation by the name of the *Bath*-ferry-company, did not impose on him the necessity to take associates, but virtually conferred on him alone the right to exercise all the corporate powers therein granted.

So far as the fifth section of that statute, authorizing the erection of piers and wharves for a horse ferry, on the land of others, for such compensation as the Sessions might assess, did not secure to the owners of the land the right to a trial by jury, its provisions would afford no protection against a suit at law, brought for the recovery of damages.

The general statute of 1821, *ch.* 166, directing the manner of publishing notice of private petitions pending before the legislature, is merely directory, and does not prevent the legislature from acting, in its discretion, upon a different notice, or upon none.

THIS was an action of the case for disturbing the plaintiffs' ferry, by setting up a horse ferry at the same place ; and it was submitted to the decision of the Court upon a statement of facts drawn up by a commissioner agreed upon for that purpose. The plaintiffs claimed the ferry as an ancient ferry, which they proved had been kept at the same place ever since the year 1762, and probably at an earlier period, as no evidence existed to the contrary. In that year the Court of Sessions granted a license to *Samuel Harnden* to keep a ferry at his landing in *Woolwich*. He then owned and occupied a large farm, extending far above and below the ferry. In 1769,

a license was granted to his son, Brigadier *Harnden*, who was owner and occupant of the same farm.   A few years afterwards the farm was sold to *Theophilus Bradbury*, Esq. whose tenants kept the ferry, but without license from the. Sessions, till 1788, when he sold the farm to *Nathaniel Day* and *Zebulon Smith ;* the former of whom was licensed as a ferryman. in the same year.   The plaintiffs derived title to the ferry-house, landing, and adjacent grounds, by divers intermediate conveyances from the grantees of *Bradbury ;* and it appeared that licenses had been granted to their grantors and themselves in the years 1805, 1812, 1822 and 1826.   No other licenses had been granted ; and none but owners of the ferry house had ever pretended a right to keep a ferry at this place.   From the year 1788 it had always been called *Day's* ferry.

The defendant justified the erection of the works and the setting up of the horse ferry, under the private statute of *March* 30, 1830, constituting himself " and his associates " a corporation by the name of the *Bath* ferry company ; and authorizing the establishment of a horse ferry at the place in question ; and the appropriation of any landings and grounds necessary for that purpose, under the direction of the Sessions, paying to the owners such compensation as the Sessions might assess.   The defendant's petitition for this act was published in certain newspapers, but not in the manner required by *Stat.* 1821, *ch.* 166, in similar cases.   He never associated an y persons with him, under this statute ; but carried its objects into effect, alone, with his own capital.   No damages had ever been assessed by the Sessions.   Some other facts were reported by the commissioner, respecting some conflicting claims of title to part of the ferry-landing, in a portion of which the defendant claimed a tenancy in common ; which are here omited, as no decision was had upon this part of the case.

*Greenleaf,* for the plaintiffs, argued that the evidence was sufficient to show a title to the ferry by prescription ; though the action was maintainable on possession alone.   2 *Dane's Abr.* 685, 686, 687 ; *Blesset v. Hart, Willes,* 508 ; *Tripp v. Frank,* 4 *D. & E.* 666.   And he contended that the act of *March* 30, 1830,

was inoperative, because the defendant had never brought himself within its provisions; neither by taking associates, which the act by implication requires; nor by causing compensation to be made, under an assessment by the Sessions. *Canal Com'rs. v. The People,* 5 *Wend.* 455; *Ex parte Jennings,* 6 *Cowen,* 518. It is also unconstitutional, as it goes to take private property from one citizen to give it to another; the horse ferry being merely a private franchise, and not a public work. 2 *Kent's Comm.* 275, 276; *Bowman v. Middleton,* 1 *Bay,* 252.

*Mitchell* and *Groton,* for the defendant, cited *Gayetty v. Bethune,* 14 *Mass.* 49; 7 *Pick.* 371; 4 *Com. Dig. tit. Grant.* G; *Co. Lit.* 131, *a;* 2 *Wend.* 109; 2 *Inst. sec.* 281, 494.

WESTON J. delivered the opinion of the Court.

The right to keep a ferry is in England an incorporeal hereditament, being a franchise granted by the crown, or depending upon prescription, which supposes a grant. The party entitled to the franchise, has imposed upon him by law certain duties, incurs certain liabilities, and has a remedy against any one, who, without right, interferes with his profits, or disturbs him in the enjoyment of his property. *Blisset v. Hart, Willes,* 508; 5 *Com. Dig.* 291. Ferries received the attention of the colonial government of Massachusetts, soon after its first settlement. As early as 1641, [*Colony and Prov. laws,* 110,] which was only thirteen years after the date of the first charter, an act passed relating to ferries; but how granted, for what periods, or by what tenure, does not appear. They were probably set up and licensed, from time to time, as the public convenience required, by the towns or other colonial authorities. By the provincial statute of the seventh of William the third, [*Col. and Prov. laws,* 280,] it was provided that no person should thereafterwards attempt to keep a ferry, so as to demand or receive pay, unless upon license first had and obtained from the court of quarter sessions for the county where such ferry is, except such ferries as were then already stated and settled, either by the court or the towns to whom they appertain. This act was revised in 1797 in

the Commonwealth of Massachusetts, and in 1821 in Maine, with the same inhibition in each, and with the same exception. *Stat.* 1796, *ch.* 42. *Stat.* 1821, *ch.* 176. All ferries therefore in Massachusetts or in Maine depend upon the general law, except such as were stated and settled as early as 1695, either by the court or the towns to whom they appertained, if any ferries are now in fact held, in virtue of a grant or license of a date so ancient.

The case of *Chadwick v. The Proprietors of Haverhill Bridge,* reported by Mr. *Dane* in his Abridgment, *vol.* 2, *p.* 686, was founded upon the claim of the plaintiff to be seised in fee of a ferry between *Haverhill* and *Bradford,* which became of no value, by reason of the erection of the defendants' bridge. The plaintiffs proved, that in 1652, the town of *Haverhill* voted that one *Symonds* and his heirs should keep the ferry on certain terms, and for a limited ferriage. The plaintiff traced back his title to the ferry, by deeds for eighty years to one *Griffin,* who was proved to have been in possession of the ferry. The action was referred. The referees awarded in favor of the plaintiff; and their report was accepted by the Supreme Judicial Court. From this and another action of the same character, Mr. *Dane* deduces that some ferries in Massachusetts are considered as private property, and as estates in fee, and not as appendant to any corporeal estate. Whether this opinion is well founded in law would depend on facts, which we have no means of investigating, and which we are not called upon to decide. We are not advised of any ferries of this description in Maine, and it may be doubted whether any such exist here. It is very manifest that the ferry in question is not of this character. Its existence is not traced back to a period earlier than 1762, since and long anterior to which time, no ferry could be established, except in virtue of a license from the Court of Sessions. And it appears in the case before us, that those who have successively held this ferry, have been licensed under the general law.

It does not appear that the right to keep a ferry, and to demand and receive toll, either in England or in this country, has at any time been incident or appendant to any estate in land. The Court of Sessions, in the exercise of their discretion, may, if they deem it

expedient, as they did in this case, license those who may be the owners of the land contiguous to the usual landing place.   Or they may deem it equitable, when a ferry has become profitable, to license the children or other heirs of those, who may have sustained the ferry, when it afforded little or no profit.   But this does not change the tenure, under which they hold.   It could not be done by any authority, short of the legislative power.   We deem it therefore unimportant to determine how the *Bradbury* estate, from whom the plaintiffs deduce their title to land on the *Woolwich* side, has been divided, or in whom the fee or right of possession vested, when this action was brought.   The best and only valid title, which the plaintiffs have made to the ferry they claim, is under a license from the Court of Sessions.   This they have established ; and no question is raised as to its regularity.   And if the defendant is not justified in setting up the horse ferry, which has impaired or destroyed that of the plaintiffs, he is answerable to them in damages.

He relies upon the act to establish the *Bath* ferry company, statute of 1830, *ch.* 89.   The efficacy of this act as a justification to the defendant, is contested on several grounds ; but principally because it transcends, as it is insisted, the legislative power.   A jurisdiction over tide and other navigable waters in England is vested in the king, and all private interests have been held in subordination to this well established prerogative.   To this jurisdiction the state governments have succeeded ; and it has been repeatedly exercised in authorizing the erection of bridges, under various limitations and restrictions.   No restraint upon this power has been understood to exist, except what arises from former grants.   These, being once vested in corporations or individuals, cannot be resumed by the legislature ; except in pursuance of a power, reserved at the time of the grant.   This principle, respected in all regular governments, where the rights of private property are held sacred, in this country is placed under the protection of the federal constitution ; a grant being a contract executed, which is placed beyond the reach of state legislation.   But a license to a party to receive, for a period not fixed or limited, a compensation for services rendered, supposed to

47

be a fair equivalent, cannot be regarded as a vested interest beyond public control. The prohibition imposed upon all other persons, does not attach to him ; and that he may not abuse his immunity, he is restrained from taking a compensation, beyond a limited amount. The right to the ferry, the franchise, in perpetuity, or for an indefinite period, like a grant of this nature from the crown, which is a species of private property oftentimes of great value, the public do not part with. The license is in the nature of an appointment to an office, having certain fees annexed, to be held at the pleasure of the appointing power.

Indeed there is nothing to restrict the Sessions from licensing as many persons as they think proper. No one may attempt to set up a ferry, so as to receive a compensation for it, unless under a license first had and obtained from the Sessions. But all who do obtain such license, may set up a ferry, and entitle themselves to the compensation limited. A monopoly may be necessary to command the services required ; and wherever it is so, no more than one will be licensed. Over many rivers, streams, or arms of the sea, a person on each side is licensed, each of whom finds it a profitable employment; while the public are better accommodated. The Court of Sessions act under a delegated power ; and the authority deputed to them does not restrain the legislature from interposing, whenever the public exigencies require. They may avail themselves of private enterprise for public purposes in the grant of a bridge, where a ferry existed before. As has been before stated, this has been repeatedly done. We have examined the acts, authorizing the erection of bridges in Massachusetts and Maine. In very few instances has provision been made for compensation to the persons, receiving the emoluments of the ferry. Whether in any case, without such provision, any thing could be recovered at law of the bridge corporation, might admit of great question. Where the ferry was private property holden in fee, as appears to have been the fact in the case cited by Mr. *Dane,* perhaps it might ; although that was one of the few cases, where the act of incorporation required satisfaction to be made to the owner of the ferry. There may be cases where such a provision for a licensed ferryman may be equitable, which if

seen and understood, would probably always be enjoined by the legislature. But it would be a condition imposed not upon, but by them ; not arising from a limitation of their power, but depending upon the exercise of their discretion.

The act, under which the defendant justifies, does not provide for the erection of a bridge, but it authorizes the use of boats, propelled by steam or horse power, confessedly a great improvement upon the ordinary mode of propelling by oars. The plaintiffs' ferry is superseded by the superiority of the defendant's mode. The Sessions certainly had authority to license the defendant or any other person to set up a ferry ; for this power is expressly given to them by law. If they could do so, without invading or violating private rights, the legislature may in the same way exercise their prerogative over the tide waters of the *Kennebec*, without being liable to that imputation. For these reasons, we are not satisfied that the constitutional objection made to the act establishing the *Bath* ferry, is well founded.

Notice was not given that the defendant would prefer his petition to the legislature, according to the general act, directing in what manner such notices may be published. *Stat.* 1821, *ch.* 166. That act was intended to facilitate the progress of business before the legislature, in all cases where orders of notice might be deemed expedient. It is a preliminary step, which if not complied with, might occasion the failure of a petition, or a postponement of its objects to a succeeding session. But the legislature may proceed, without requiring notice to be given, or may be satisfied with notice varying from that prescribed, without affecting the validity of their acts.

It is urged that the defendant is not invested with the powers contemplated by the act, inasmuch as he never took associates. He was created a corporation by the act, which took effect from its passage. It was intended to embrace such associates, as he might thereafter receive. If the duty was imposed upon him to take associates, it was a condition subsequent. But he is not required by the act, to call in the aid of others. If he was possessed of adequate funds, he could serve the public as effectually by himself and

his agents, as if other persons shared in the duties and the profits. The seventh section empowers the defendant to call the first meeting, and prescribes what notice he shall give. This assumes that persons were to assemble, entitled to be notified of the time and place of meeting. It would have been necessary, if the defendant had taken associates; but if he had no one to notify, and no one to consult, it would have been a useless formality.

If the defendant has not done what the legislature intended, he is entirely in their power. Besides the ordinary process of law, by which his franchise, if forfeited, may be declared vacated, the legislature have reserved to themselves the right at any time to enlarge, restrain, or annul the powers granted by the act. But individuals, whose rights are not violated, have no authority to call him to account. *Charles River Bridge v. Warren Bridge,* 7 *Pick.* 371.

By the fifth section, the defendant was empowered to erect such piers, railways, wharves, buildings or other conveniences, as might be necessary for maintaining his ferry, at such places, on the shores of the *Kennebec,* in the towns of *Bath* and *Woolwich,* as the Court of Sessions should adjudge convenient, making such compensation to the owner of the land or privilege so occupied and improved, as the Court of Sessions might assess. If this provision does not secure to such owner his constitutional right of a trial by jury, the statute would afford no protection against a suit at law brought by him for the recovery of damages. And if the plaintiffs, as owners of the land or privilege, so taken and occupied by the defendant, had brought their action for damages, we do not decide that it might not have been maintained. So far as they claim to be reimbursed for the profit they have lost by the defendant's ferry, we have already disposed of the case. The damages found by the commissioner, are predicated upon this ground alone. They do not complain that the defendant has erected his wharves, piers, platforms or other works on their land. And if they did, these erections appear to be placed upon land of which he is either sole seised, or seised as tenant in common, and it does not appear that the plaintiffs have been prevented from participating in the benefit

of them, or that they have been ousted or deprived of any interest in common, to which they can make title.

Upon the whole, we are of opinion that upon the facts found, the plaintiffs have failed in their action.

*Plaintiffs nonsuit.*