## PEOPLE'S FERRY COMPANY *vs.* CASCO BAY LINES.

### Cumberland.    Opinion January 30, 1922.

*All ferries in this State are governed not by common law, but by statute, general or special. Plaintiff does not have exclusive rights of transportation between Portland Pier in Portland, and Forest City Landing on Peak's Island. Vested rights of defendant not impaired by successive legislative acts in an attempt to acquire exclusive rights of transportation.*

1.  The plaintiff's right of recovery rests wholly upon its claimed possession of exclusive rights of transportation between the two points in question, and the solution of that question determines this action.

2.  It is unnecessary to consider the rights of a ferry existing at common law because no common law rights are involved here. All ferries in this State are governed not by common law, but by statute, general or special.

3.  Chapter 27 of the R. S., the general ferry act, has no application in this case because the plaintiff's ferry was not established by the County Commissioners of Cumberland County under that statute, but by special act. Therefore the plaintiff acquired no exclusive rights under the general statute.

4   Under the original act of incorporation, Chapter 495 of the Private and Special Laws of 1885, the plaintiff company was empowered to maintain a steam ferry between Ferry Village in Cape Elizabeth and the city of Portland. That was not the route under discussion here.

5.  By Chapter 277 of the Private and Special Laws of 1907, additional rights were conferred and its limits of operation were extended so that it might maintain and operate a ferry between Portland Pier and various islands in Casco Bay including Peak's Island, with the right to acquire all necessary real and personal property, wharves and wharf privileges.

6.  By Section 8 of that act unless the company should establish its lines between Portland and at least one of the specified islands within two years from the passage of the act, the granted rights and privileges were to cease. The defendant contends that the company's rights were forfeited. But it is unnecessary to consider the effect of this section as applied to the facts in this case. Assuming without deciding that the rights were not forfeited the important consideration remains that no exclusive right was conferred upon the plaintiff by this amendment of 1907.

7.  The Legislature of 1919, by Chapter 94 of the Private and Special Laws, still further amended the plaintiff's charter by adding two sections. Section 10 is as follows: "No other ferry or steam or other boat line operating between Portland and Peak's Island shall make or maintain a landing place at Peak's Island southerly or westerly of Trefethens Landing, without the written consent of the Public Utilities Commission; but nothing herein shall be construed to interfere with or impair the existing vested rights of any other transportation company."

8.  It is evident that the plaintiff sought by this amendment to obtain exclusive rights at the Peak's Island landing place, rights which it thereby impliedly admitted it had not possessed prior to that time, but the last clause thwarted the attempt as against the defendant, because the defendant's assignor, a "transportation company," did have "existing vested rights" at that landing place

9.  The Casco Bay and Harpswell Lines, incorporated under the general law in 1907, carried on the steamboat business between Portland and the Islands in Casco Bay including Peak's Island, and acquired a large amount of property, including a ten-year lease, dated June 3, 1914, of wharf property, waiting-room, etc., at Forest City Landing   This company went into the hands of Receivers on July 10, 1919, and under an order of court this lease was assigned by the Receivers to the defendant, the trustee under the trust mortgage joining in the assignment.  These leasehold rights are held by the defendant and are protected under the clause above recited.

10. It is unnecessary to decide whether the approval of the defendant's schedule of fares between Portland and Forest City Landing by the Public Utilities Commission in 1920 can be construed as their written consent to use the Forest City Landing as provided in the Act of 1919, because the defendant's vested rights have taken the defendant corporation out of the prohibition attempted by that act.

11. Section 11 of Chapter 94 of the Act of 1919 in terms authorizes the city of Portland to create a subsidy in aid of the People's Ferry Company "or any other ferry line, steamboat line or power boat line making landings at Portland and any of the islands of Casco Bay." This section recognizes other lines and is inconsistent with a legislative intent to grant an exclusive right to the plaintiff.

12. We are unable to discover any source of the exclusive rights claimed by the plaintiff and therefore the case at bar is without legal foundation.

On report. This is an action brought by the People's Ferry Company against Casco Bay Lines, to recover damages for alleged interference by the defendant corporation with what the plaintiff corporation alleges to be its exclusive rights of transportation between Portland Pier in the city of Portland and Forest City Landing on Peak's Island in Casco Bay.

A plea of general issue was filed with a brief statement alleging justification. By agreement of the parties the case was reported to the Law Court upon so much of the evidence as was admissible for the determination of all issues raised by the pleadings, and if the defendant be held liable, the case to be remanded to the trial court for assessment of damages. Judgment for the defendant.

The case is fully stated in the opinion.

*William H. Murray,* for plaintiff.

*Nathan W. Thompson, and A. S. Littlefield,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, MORRILL, WILSON, JJ.

CORNISH, C. J. The plaintiff corporation owns and operates a steam ferry between Portland Pier in the city of Portland and the ferry slip at Peak's Island in Casco Bay. The defendant corporation owns and operates a line of steamboats running between Custom House Wharf in the city of Portland and Forest City Landing on Peak's Island, as well as between various other points on the islands of Casco Bay. The two wharves in Portland are about one hundred and twenty-five feet and the two landing places at Peak's Island about forty feet apart.

This action on the case is brought to recover damages in the sum of fifteen thousand dollars because of the alleged unlawful transportation of passengers and property for hire by the defendant between June 1, 1920, and the date of the writ, and the consequent interference with and injury to the alleged exclusive right of the plaintiff to maintain and operate its ferry between the points aforesaid. The case is before the Law Court on report for the purpose of determining simply the question of liability. If this action is maintainable then it is to be sent back to the court at nisi prius for the assessment of damages. If it is not maintainable then judgment is to be rendered for the defendant. The material facts are not in dispute. The plaintiff's right of recovery rests wholly upon its claimed possession of exclusive rights of transportation between the two points in question, and the solution of that question will determine this action.

It is therefore imperative to inquire from what source these alleged exclusive rights have been acquired by the plaintiff because their existence is not to be assumed. Monopolies are not favorites of the law.

1. In the first place it is unnecessary to determine or consider the rights and remedies of a ferry existing at common law because no common law rights are here involved. All ferries in this State are governed not by common law but by statute, it may be by the general statute regulating the establishment, licensing and control of ferries by County Commissioners as set forth in detail in R. S., Chap. 27, Sec. 1 to 13 inclusive, *Peru* v. *Barrett*, 100 Maine, 213; where the court say: "the only proprietorship in a ferry in Maine is the franchise conferred by statute;" or it may be by special acts of the Legislature, *Day* v. *Stetson*, 8 Maine, 365.

2. The general statute, Chapter 27, has no application here because the plaintiff's ferry was not established by the County Commissioners of Cumberland County under that statute.

A casual reading of Section 5 of that chapter might lead one to think its provisions were applicable, but they are not. That section provides as follows: "When a ferry is established by the Legislature to be passed by a steam or horse boat no other ferry shall be established on the same river within one mile above or below it." When the original act regulating ferries was passed in Maine, R. S. 1821, Chapter 176, steam ferries were unknown. Their use was subsequently recognized and authorized when established, not by County

Commissioners but by the Legislature, Public Laws 1830, Chapter 457, and in 1842, the act which has been condensed into Section 5, above referred to, was passed. It was in these words: "Where a ferry has been established or may hereafter be established by the legislature on which a horse boat or steam boat is to run, the County Commissioners shall not have power to establish another ferry on the same river within one mile above or below the place of such horse or steam ferry." Public Laws 1842, Chapter 16. In the revision and condensation of 1857, Chap. 20, Sec. 5, which has remained in the same form throughout all subsequent revisions, the fact that the "other ferry" which is prohibited after the establishment of a steam ferry, means one established by the County Commissioners is not specifically expressed, but those words are necessarily implied considering the origin and history of the section. "A change in phraseology in the revision of a statute in a general revision does not change its effect unless there is an evident legislative intention to work such change." *Martin* v. *Bryant* 108 Maine, 253; *Glovsky* v. *Maine Realty Bureau*, 116 Maine, 378; *Camden Auto Company* v. *Mansfield*, 120 Maine, 187. The purpose of the Legislature was to prevent conflict of authority and, after a ferry had been established by the Legislature, not to allow the County Commissioners to establish another within the prescribed limits. The plaintiff corporation therefore acquires no rights in this case under Chap. 27, Sec. 5.

Nor is it benefited by Section 6 of the same chapter, which grants a remedy to an established and licensed ferry against any party transporting without authority persons or property for hire across such established and licensed ferry. This section is in substantially the same form as in the original Ferry Act of 1821, Chapter 4, and applies to ferries established and licensed by the County Commissioners. We may, therefore, eliminate R. S., Chap. 27, the general ferry act, as granting any rights or remedies of avail to the plaintiff here.

3. The plaintiff corporation was established by special act of the Legislature and we must therefore examine its charter, and the subsequent amendments thereto, to ascertain the scope and limits of its rights and powers.

The original act of incorporation is Chapter 495 of the Private and Special Acts of 1885, and under that act the People's Ferry Company was authorized to establish, set up and maintain a steam ferry

across Fore River between Ferry Village in Cape Elizabeth and the
city of Portland. Rates of toll were established and certain rights
and duties were prescribed, together with the right to acquire by lease,
purchase, gift or in some other lawful manner the necessary property
and equipment, but no exclusive right to maintain such ferry was
granted or even intimated, and that route was not the one under
discussion here.

4.   By Chapter 277 of the Private and Special Laws of 1907 addi-
tional rights were conferred upon this company and its limits of
operation were extended in these words:  "The right to establish,
set up, maintain and operate a ferry between Portland Pier, so called,
and other points in the city of Portland and the following islands in
Casco Bay:  Great Diamond Island, Little Diamond Island, Long
Island, Peak's Island and Cushing's Island and one or more points on
the shore of the town of Cape Elizabeth and the city of South Port-
land" etc., with the right to acquire all necessary real and personal
property, wharves and wharf privileges.

By Section 8 of that act unless the company should establish its
lines between Portland and at least one of the specified islands within
two years from the passage of the act, the granted rights and privileges
were to cease.   It is unnecessary to consider the effect of this section
as applied to the facts of the case.   For the purposes of this case it
may be assumed that the additional rights were not forfeited and that
the plaintiff legally and seasonably established its ferry between
Portland Pier and Peak's Island.   The important consideration
remains that no exclusive right was conferred upon the plaintiff by
this Act of 1907, and it is this act and the amendment of 1919 thereto,
by virtue of which the plaintiff claims to base its recovery.

5.   The Legislature of 1919, by Chapter 94 of the Private and
Special Laws, still further amended the plaintiff's charter by adding
two sections.   Section 10 is as follows:   "No other ferry or steam or
other boat line operating between Portland and Peak's Island shall
make or maintain a landing place at Peak's Island southerly or
westerly of Trefethen's Landing without the written consent of the
Public Utilities Commission; but nothing herein shall be construed
to interfere with or impair the existing vested rights of any other
transportation company."   Section 11 has no bearing upon the point
now under discussion, but will be considered later.

It is evident that the plaintiff company sought by this amendment to obtain exclusive rights at the Peak's Island landing place, rights which it thereby impliedly conceded it had not possessed prior to that time; but the last clause of that section thwarted the attempt as against the defendant, because the defendant's assignor a transportation company, did have existing vested rights at that Peak's Island landing place. The record shows that many transportation companies had successively been operating between Portland Pier and Peak's Island, covering a period of thirty or forty years. To go no further back than 1907, the Casco Bay and Harpswell Lines was then incorporated under the general law to carry on a general steamboat business between the city of Portland and the islands in Casco Bay, including Peak's Island. That company acquired and owned a large amount of property, real and personal and among other rights it held a ten-year lease dated June 3, 1914, from the Welch Land Company, of wharf property, waiting-room, etc. at the Forest City Landing. It went into the hands of Receivers on July 10, 1919, and under an order of court this lease was assigned on May 20, 1920, by the Receivers to the defendant, the Casco Bay Lines, the trustee under the trust mortgage joining in the assignment. These leasehold rights were existing and vested in the Casco Bay and Harpswell Lines when the amendment of 1919 was passed and therefore were as fully protected as if specifically named therein. They passed in due course to this defendant and this defendant now holds them under the same legislative as well as constitutional protection.

The question has been raised whether the defendant has not also complied with another provision in the act of 1919, and in fact obtained the written consent of the Public Utilities Commission to use the Forest City landing, because application was made by the defendant to that Commission in 1920 for a schedule of rates between Portland and its nineteen different landings in Casco Bay, including Peak's Island. That schedule was approved in writing by the Commission and established among others the rates between Portland and Forest City Landing. The defendant contends that the written approval of the rates between those two points necessarily had the legal effect of granting permission to run between those points and to use that landing. The plaintiff on the other hand claims that the consent contemplated by the Act of 1919 was

not an implied permission but an express consent and authority granted only upon petition therefor and after due notice to all parties interested and after hearing thereon.

It is unnecessary in the present case to determine this question because, as we have already seen, the defendant's vested rights at Forest City Landing have taken the defendant corporation out of the prohibition attempted by the Act of 1919.

In this connection one other expression of legislative intent should not be overlooked, and that is contained in Section 11 of Chapter 94 of the Private and Special Laws of 1919, the amendment to the plaintiff's charter already referred to, viz.: "The city of Portland may raise a sum not exceeding ten thousand dollars for the following purposes: To aid in defraying the expenses of securing adequate transportation for passengers, freight and vehicles by the People's Ferry Company or any other ferry line, steamboat line or power boat line, making landings at Portland and any of the islands of Casco Bay and for such purposes the city of Portland may enter into such contracts as the City Council may determine." This section is most significant. It authorizes a subsidy for the benefit not merely of the People's Ferry Company but of any other ferry line, steamboat line or power boat line operating between Portland and the islands, including necessarily Peak's Island. It recognizes other lines and is utterly inconsistent with a legislative intent to grant an exclusive right to the plaintiff company. The object to be accomplished was "the securing of adequate transportation service" and the selection of the company through which that could best be attained was left to the discretion of the City Council.

Without further discussion it is sufficient to state that we are unable to discover any source of the exclusive rights claimed by the plaintiff and alleged in the declaration and therefore the case at bar is without legal foundation. Under the stipulation the entry must be,

*Judgment for defendant.*