JOHN M. GOODING

*vs.*

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.

Cumberland.   Opinion December 18, 1912.

*Agents. Applications. Contracts. Commissions. Compensation. Custom. Insurance. Money had and received. Policies. Premiums. Referee. Renewals.*

1. Assumpsit to recover commissions on renewal premiums, after two years from the date of the last service of the plaintiff to the company.
2. The continued payment of the fixed premium by a policy holder does not warrant the recovery by the agent upon a count for money had and received of a commission on such renewal premiums collected, after he ceased to be agent, in the absence of any contract of the company with the agent for the payment of such commissions.
3. When the terms of a contract are clear and unambiguous, evidence of acts of the parties claimed to be an interpretation of the contract cannot be permitted to vary such terms.
4. Custom cannot be taken into account when the contract is express, clear and unambiguous.
5. In the absence of express stipulations to the contrary, the agent of a life insurance company is not entitled to commissions on renewal premiums paid to the company after the termination of the agency.

On report.   Judgment for defendant with costs of reference taxed at $20.40 and cost of court to be taxed by the clerk.

This is an action of assumpsit to recover commissions on renewal premiums collected by the defendant from policy holders obtained for the company by the plaintiff while in the employ of the company as general or sub-agent. The claim is only for commissions on renewal premiums collected after the expiration of two years from the date of the last service of plaintiff to the company. The case was referred to Mr. Chief Justice Emery, who reported his findings of fact and referred to the court the question of law, whether upon

the facts reported the plaintiff is entitled to recover. The case, by agreement of the parties, was reported to the Law Court for determination upon the facts found by and the written evidence made a part of the report of the referee.

The case is stated in the opinion.

*Fred V. Matthews,* for plaintiff.

*H. & W. J. Knowlton,* for principal defendant and for George E. Smith, Trustee.

*Verrill, Hale & Booth,* for United States Trust Company, trustee.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

BIRD, J. This action of assumpsit was referred to Mr. Chief Justice Emery who reported his findings of fact and referred to the court the question of law whether upon the facts reported the plaintiff is entitled to recover. The contention of the parties is clearly and succinctly set forth in the opening statement of the report of the referee.

"The plaintiff brought this action to recover commissions on the renewal premiums collected by the company from policy-holders obtained for the company by the plaintiff while in the employ of the company as general or sub-agent. The claim is only for commissions on renewal premiums collected after the expiration of two years from the date of the last service of the plaintiff to the company, he having been paid such commissions on renewals up to the end of that two years. In his declaration are two counts. In the first he claims the commissions as due under a contract to pay them. In the second he claims them as money collected by the defendant company of its policy holders which it ought in equity and good conscience to pay over to him. The company claims that all the services of the plaintiff were rendered under express contracts, by the terms of which the payment of commissions on renewal premiums was to cease at the end of two years after the expiration of the contract, if not renewed; and that it has collected no money he should receive."

The case is now before this court upon report for determination upon the facts found by and the written evidence made part of the report of the referee, the stipulation of the parties under which the reference was made, the rule of reference and the writ and pleadings.

The plaintiff's first connection with the company was in September, 1888, when he and one Merry became the general agents of the company for certain counties of the State. They were constituted such agents under a written contract signed by them as well as the company, dated September 18, 1888. "In this contract [we quote from the findings of the referee] it was stipulated that their full compensation for services and work and expenses in procuring applications and collecting and remitting the first year's premiums should be a commission on the first year's premium. It was also stipulated that they should collect and be entitled to 'collect the renewal premiums on all policies obtained by themselves and their agents under this contract during the term thereof within the limits of said agency, for which collections the said agents shall receive seven and one-half per cent of such renewal preimums while they retain such agency, but not longer, as to any policy, than the person thereby insured remains resident within the territory of said agency.' There was also in the contract this stipulation: 'In case this contract is not renewed at the end of the term upon as favorable terms regarding commissions as the said company is at that time contracting for similar agents, the said company will pay said agents two years' renewal commissions less two per cent on the premiums collected on all policies obtained under this contract and then in force within the limits of this contract, said renewal commission to be paid quarterly as premiums are paid and reported to the company. It is further agreed that in case of disability by sickness or death of either of said agents, the company will pay two years' renewal commissions less two per cent of the premiums collected on all the policies obtained under this contract and then in force within the limits of this contract, in the same manner as above mentioned.'

"There was finally this stipulation: 'It is further understood and agreed that upon the discontinuance of this contract in any way, all

interest of said agents in this contract in commissions on premiums shall revert back to the company, except as above mentioned, and upon the deferred premiums on new business unless otherwise specially agreed.'

"The above contract by its terms was to continue till September 15, 1893; but Merry having withdrawn, Gooding, the plaintiff, December 29, 1891, made a new written contract with the company by which he was appointed sole agent for the same territory, with like stipulations as to compensation and payment of commissions on renewal premiums. This contract was by its terms to continue till November 17, 1896; but on September 30, 1893, the company appointed Mr. Wright general agent for the same territory by written contract to continue till October 1, 1898, containing like stipulations as to compensation and commissions on renewals. Mr. Gooding, the plaintiff, acquiesced in this appointment, surrendered his contract, and accepted a sub-agency under Mr. Wright, under which sub-agency his service was not continuous, there being an interval when he was not acting under it nor for the company. Wright died in March, 1896, and May 12, 1896, the company appointed the plaintiff Gooding and Mr. C. C. Chapman as general agents for the same and other territory. This contract by its terms was to continue until May 1, 1897, and contained stipulations similar to those in the prior contracts as to compensation and payments of commissions on renewals. ·

"This last contract was not renewed at its expiration May 1, 1897, but Mr. Gooding continued for a time to act as the general agent, expecting to be reappointed under a renewal of the written contract of May 12, 1896.

"In November, 1897, however, the company appointed Mr. Blanchard general agent in the place of Mr. Gooding, by the usual written contract, but requested Mr. Blanchard to retain the services of Mr. Gooding as sub-agent under him, and so advised Mr. Gooding, who continued to work for the company with the expectation of a favorable arrangement with Mr. Blanchard, as verbally proposed. Mr. Blanchard did not take charge till January 1, 1898. Some friction or misunderstanding arose between the two, and the draft of a contract of sub-agency under Mr. Blanchard, and pre-

pared by him and submitted to Mr. Gooding, was deemed by the latter unreasonable and impracticable, and he refused to sign it. Mr. Blanchard refused to modify it, and after a little while requested Mr. Gooding to give up his keys and leave the office, which he did March 8, 1898.

"Throughout his employment Mr. Gooding's work was generally satisfactory to the company itself, the only criticisms made being that he was sometimes slow in reporting and remitting collections. The relations, however, between Mr. Blanchard and Mr. Gooding became strained, and Mr. Blanchard became convinced that Mr. Gooding would not work faithfully and efficiently under him. I do not pass upon the question whether such was the fact, as I deem is immaterial. 1 only find that Mr. Blanchard became convinced that such was the fact, and from his information had some reason for so believing.

"The company only dealt with its general agents, holding them responsible for their sub-agents, and leaving them free to select their sub-agents and make such contracts with them as they could agree upon.

"The company has paid Mr. Gooding the agreed commissions on renewal premiums on all the business secured by him for the company from the time of the first application obtained by him in 1888 down to the last in 1898, and for, two years after the date of the last. It continued these payments without reference to any intervals in service or between the successive contracts.

"The company, however, has refused to pay commissions on any renewals since the expiration of two years from the last service."

Considering the first count of the declaration in which plaintiff claims commissions as due under a contract to pay them, the report shows that during the time covered by the first count there were periods during which plaintiff acted as general agent under written contracts made by defendant, other periods during which plaintiff acted as sub-agent under written contracts entered into by general agents with plaintiff and still other periods when plaintiff acted as agent or sub-agent without contract, either written or oral. The contracts of general agency provide that the full compensation of the agent for labor and disbursements in procuring applications

and collecting and remitting the first year's premiums was to be a commission on such premiums; that as to commissions on renewals premiums on policies procured by him and his sub-agents during the term of the contract, the agent shall receive seven and a half per cent while he retains such agency; and that upon the discontinuance of the contract in any way all interest of the agent in commissions on premiums should revert back to the company "except as above mentioned." The only exception "mentioned" necessary to be considered is "In case this contract is not renewed at the end of the term upon as favorable terms regarding commissions as the said company is at that time contracting for similar agents, 'the company will pay' said agents two years' renewal commissions less two per cent on the premiums collected on all policies obtained under this contract."

In all this the contracts are clear and unambiguous. The plaintiff, however, urges that another interpretation has been placed upon the contract in view of the payment and receipt of renewal premiums by defendant and plaintiff respectively until two years had elapsed after the latter ceased to act in any capacity for the defendant. But if the acts of the parties in question, are evidence of an interpretation of the contracts by the parties, the evidence cannot be permitted to vary their terms, since they are clear and unambiguous: *Clarke* v. *Eastern Advertising Co.,* 106 Maine, 59, 61; *Bishop* v. *White,* 68 Maine, 104, 107; *Railroad Co.* v. *Trimble,* 77 U. S., 367, 377. Pollock on Contracts, (3d Am. Ed.) 572.

We understand the plaintiff to invoke custom to sustain his contention. While the report of the referee is silent as to custom, there may be evidence as to custom in the evidence taken before the referee, but it is sufficient to say that custom cannot be taken into account where the contract is express, clear and unambiguous. *Stagg* v. *Ins. Co.,* 77 U. S., 589; *Partridge* v. *Ins. Co.,* 15 *Wall,* 573, 579; *Spaulding* v. *Life Ins. Co.,* 61 Maine, 329, 332; *Norton* v. *University of Maine,* 106 Maine, 436, 440; *Marshall* v. *Perry,* 67 Maine, 78, 83; see also *Park* v. *Piedmont, etc. Ins. Co.,* 48 Ga., 601, 606.

The contracts of general agents with plaintiff by which he became sub-agent make substantially the same provisions as to

compensation, mutatis mutandis, as the contracts already considered. Each stipulates that "nothing herein contained shall make or be so construed as to make the said company liable to the said agent under any of the provisions of this contract, or in any manner whatever, anything herein contained to the contrary notwithstanding." Each contract also provides "that in the event of the death, resignation or removal from office, of the said general agent, the said Gooding, this contract being then in force, shall be entitled to two years' renewal commissions on business already placed by him, provided he continues during such two years to act as an agent for the company."

The later sub-agency contract bears a rider executed by a general official of defendant approving the contract, in the event of the death, etc., of the general agent, in so far as to protect the plaintiff in the enjoyment of the renewal premiums specified therein, provided and so long as said Gooding continues to work satisfactorily and exclusively for the company. It is clear that this proviso does not extend the period during which the commissions on renewal premiums are to be paid but imposes additional conditions during the same period.

We can come to no different conclusion regarding the claim of plaintiff under the sub-agency contracts from that reached upon the contracts for general agency above considered.

The remaining period of his service the plaintiff acted under no contract. There could therefore during this period have been no express contract entitling plaintiff to commissions on renewal premiums and it has been held that "in the absence of express stipulation to the contrary, an agent is not entitled to commissions on renewal premiums paid after the termination of the agency." *Spaulding* v. *Ins. Co.*, 61 Me., 329; *Phoenix etc. Ins. Co.* v. *Holloway*, 51 Conn., 310; *Park* v. *Piedmont etc. Ins. Co.*, 48 Ga., 601; *Frankel* v. *Ins. Co.*, 158 Ind., 304; *Jacobson* v. *Ins. Co.*, 61 Minn., 330; *Montreal etc. Ins. Co.* v. *Charles*, 17 Fed. Cas. No. 9975; and other cases, see 22 Cyc., 1441.

The second count of the declaration is a count for money had and received and as to this count the referee finds the following additional facts:

"The defendant company is a mutual life insurance company located in Wisconsin, and doing a large business all over the United States and Canada. It fixes and did fix the rates, the amount of the initial and annual renewal premiums, at such sums as it deemed necessary to provide for the payment of policies as they might become payable, for the salaries of officers and compensation to agents, for office and other expenses, and in addition a surplus fund for investment as security for policy-holders. In providing for compensation to agents, the rate, or amount of premium, was fixed on the assumption that commissions on annual renewal premiums would be paid the agent as long as the policy remained in force. . If, however, the payment of these commissions upon any policy ceased before the maturity or expiration of the policy, the premium upon that policy was not reduced pro tanto, but continued to be collected in full, and the saving was carried to the general surplus or distributed with other savings in the form of dividends to all the policy holders of that class."

The payment of renewal premiums by policy holders to defendant was coupled with no promise or agreement on the part of defendant to pay any one to whom the policy holders were indebted. They were under no obligation to the plaintiff. If upon receiving payment of renewal premiums from policy holders there was any agreement by defendant, it was to pay its own indebtedness, if such existed. Such payment by the policy holders was primarily for the benefit of defendant and but incidentally for that of plaintiff, if the defendant was under obligation to pay him. *Keene* v. *Sage,* 75 Maine, 138, 140. But, as we have seen in considering the first count of the declaration, defendant was under no obligation to pay plaintiff commissions. If any suit may be maintained against defendant for the commissions included, with other estimated expenses of defendant's business, in the renewal premiums paid by a policy holder and not paid to any one because of the absence of contract for such payment, it would seem that a policy holder alone can institute it.

We think the plaintiff cannot recover upon the second count. To hold otherwise would be a denial to defendant of liberty to make its own contracts and maintain uniform premium rates. The fact

that commissions are included in the estimate of its expenses upon which the premiums are based cannot, in itself, entitle an agent thereto any more than it would entitle a lessor to the defendant of real estate to rent after the expiration of the lease or to the continued payment of the same rent although by agreement of defendant and lessor the rent had been reduced.

> *Judgment for defendant with costs of reference taxed at $20.40 and costs of court to be taxed by the clerk.*