INHABITANTS OF THE TOWN OF BEALS
*vs.*
URIAH H. BEAL

Washington.   Opinion, June 16, 1953.

*Blaisdell & Blaisdell,* for plaintiff.

*Dunbar & Vose,*
*Nathan W. Thompson,* for defendant.

SITTING: *MURCHIE, C. J., MERRILL, C. J., THAXTER, FELLOWS, NULTY, WILLIAMSON, JJ.

FELLOWS, J.   This action is a Bill in Equity brought by the inhabitants of the town of Beals, a municipal corporation located in the County of Washington, State of Maine, against Uriah H. Beal of Beals, Maine, asking for an injunction, both temporary and permanent, to restrain the defendant from operating a ferry between the town of Beals and Jonesport, and comes to the Law Court upon an agreed statement of facts.

The bill alleges that by Private and Special Laws of Maine 1951, Chapter 135, the plaintiffs were authorized to establish and maintain a ferry between the town of Beals and the town of Jonesport in Washington County, Maine; that the plaintiffs have continuously maintained and operated such a ferry since September 1, 1951; that the plaintiffs have acquired boats and necessary equipment and have constructed landing places; that plaintiffs have expended money in maintenance and operation; that the defendant, Uriah H. Beal, without legal authority has operated and maintained a ferry between the towns of Beals and Jonesport since August 20, 1951 and still does operate and main-

tain; that the operation of a ferry by the defendant "will hereafter cause irreparable loss to the plaintiffs *if allowed to continue;*" that plaintiffs "have no plain, adequate and complete remedy at law." The plaintiffs pray temporary and permanent injunction restraining defendant from operating a ferry, and "such other and further relief as the nature of the case may require." The bill does not allege a multiplicity of suits at law past or the future, or that because of threatened invasion of plaintiff's alleged rights many suits will be necessary. There is no allegation that the defendant will continue operation of a ferry or that he threatens to continue.

The principal agreed facts are as follows: By Private and Special Laws of Maine, 1951, Chapter 135, plaintiffs were authorized to establish and maintain a ferry between the towns of Beals and Jonesport. Pursuant to the law the plaintiffs have established and continually maintained since September 1, 1951, a ferry for the purposes set forth in the act and have acquired boats and engines and established suitable landing places necessary for the operation of the ferry.

The defendant has a license from the U. S. Coast Guard to operate or navigate motor boats carrying passengers for hire. The license states: "This is to certify that Uriah H. Beal has given satisfactory evidence to the undersigned officer in charge, Marine Inspection in the District of Portland, Maine, that he can safely be intrusted with the duties and responsibilities of operation of motor boats as defined in the Act of April 25, 1940, when carrying passengers for hire on the navigable waters of the United States and is hereby licensed to act as such operator for the term of five years from this date. Given under my hand this twenty-seventh day of April, 1949. A. H. Nesbit, Officer in Charge Marine Inspection."

Moose-a-bec is that body of navigable tide water lying between the towns of Jonesport and Beals over which the ferry is operated.

Three actions of debt are now pending in the Superior Court, Washington County, Inhabitants of the Town of Beals vs. Uriah H. Beal, for operating a ferry between Beals and Jonesport without authorization of the town of Beals; that the defendant has operated a ferry and is now operating a ferry without authorization of the town of Beals.

The defendant, Uriah H. Beal, has been operating a ferry between the town of Jonesport and Beals and other portions of Moose-a-bec Reach since May 15, 1935. He has made a substantial investment for ferry purposes in two boats, shore privileges on the Jonesport side, and a wharf on the Beals side. The defendant applied, approximately eight years ago to the Public Utilities Commission for a franchise to operate a passenger-ferry service in Moose-a-bec Reach but was informed by the Public Utilities Commission that it had no jurisdiction. Between 1941 and September 1, 1951 at the time of the establishment of the ferry by the town, the defendant was continually operating a ferry service for passengers in Moose-a-bec Reach.

Following the passage of Chapter 135 of the Private and Special Laws of Maine, 1951, the town of Beals voted that it would not authorize defendant Uriah H. Beal to operate a passenger ferry. At a special town meeting on October 8, 1951 the town voted to choose a committee to take charge of matters concerning the town ferry, and the following committee was chosen by ballot vote: Edward G. Beal, Chairman; Marshall Kelley, Secretary; Charles Beal, Treasurer, Peter Fagonde, Guy Carver.

Under Chapter 135 of the Private and Special Laws of Maine, 1951, the town of Beals is authorized to establish and maintain a ferry and to employ such persons as may be nec-

essary, or to lease the right to operate to any responsible person or persons "who shall be legal residents of Beals." The act contains provisions relative to hours of operation, negligence of ferry man, ramps and landings, rates, supervision of equipment by selectmen, and the purchase of boats and materials by the town. The act further provides that "the selectmen of the town of Beals shall have supervision of the ferry and be directly responsible to the people of the town for such supervision and management of the prudential affairs of the ferry." Section 5 of the act is as follows: "Any person who operates a ferry between Beals and Jonesport without authorization of the town of Beals, or who furnishes for hire a boat or other craft for such purposes, forfeits $4 for each time of transportation, to be recovered by the town of Beals by an action of debt."

A ferry is a liberty, or a right, to have a boat for passage across a body of water in order to carry passengers or freight for a reasonable toll. It is a continuation of a highway. *State* v. *Wilson*, 42 Me. 9, Bouvier's Law Dictionary (Rawles Third Revision), "Ferry." There is no proprietorship in a ferry in this state except by franchise conferred by a statute. Any individual has a right to keep and use boats for his own accommodation if not carrying for hire. *Peru* v. *Barrett*, 100 Me. 213; *Ferry Co.* v. *Casco Bay Lines*, 121 Me. 108. For the history of early Maine and Massachusetts ferries see *Day, et als.* v. *Stetson*, 8 Me. 365.

The power to establish ferries is not exercised by the Federal government but lies within the scope of those undelegated powers reserved to the state. *Waukeag Ferry* v. *Arey et als.*, 128 Me. 108; *Ferry Co.* v. *Casco Bay Lines*, 121 Me. 108; see *Port Richmond Ferry* v. *Hudson County*, 234 U. S. Sup. Ct., 317; 58 L. Ed. 1330; 36 Corpus Juris Secundum, "Ferries," 682, Sec. 7; 22 Am. Jur. "Ferries," 557, Secs. 9-11.

The grant of a ferry franchise, unless it is limited by a general law, or a restriction in the grant itself, is exclusive

to the extent of the privilege conferred; but it is not exclusive unless expressly so stated, or the conclusion necessarily arises by implication. The grant will be construed in favor of the sovereign and against the grantee. *Waukeag Ferry* v. *Arey*, 128 Me. 108. All ferries in Maine are governed by general or special statute, and not by common law. *Ferry Co.* v. *Casco Bay Lines*, 121 Me. 108.

A license from the United States to carry passengers for hire on navigable waters is not a license to operate a ferry. *Midland Terminal & Ferry Co.* v. *Wilson*, 28 N. J. Equity, 537; *City of New York* v. *Starin*, 12 N. E. 631. See 22 Am. Jur. "Ferries," 576, Secs. 36, 37.

Under Section 526 F of Title 46 U. S. Code Annotated, referred to as the "Act of April 25, 1940," containing certain safety provisions regarding motor boats, the defendant was licensed to operate a motor boat "carrying passengers for hire." The license from the United States did not and did not attempt to give a right to operate a ferry. Title 49, Section 903, Par. 1, U. S. Code Annotated provides that "nothing in this chapter shall be construed to interfere with the exclusive exercise of each state of the power to regulate intrastate commerce by water carriers within the jurisdiction of the state."

This court has recently said: "The adequacy of the statutory remedy against an injury existing only by virtue of the statute is for the legislature and not for the court to determine. 'Whenever a legal right is wholly created by statute, and a legal remedy for its violation is also given by the same statute, a court of equity has no authority to interfere with its reliefs, even though the statutory remedy is difficult, uncertain, and incomplete.'" *Perry et al.* v. *Dodge*, 144 Me. 219, 67 Atl. (2nd) 425. In *Almy* v. *Harris*, 5 Johnson Reports (N. Y.), 174, which was a suit for disturbing enjoyment of a ferry, on certiorari the court say: "Harris had no exclusive right at the common law, nor any right but what

he derived from the statute. Consequently, he can have no right, since the statute, but those it gives; and his remedy, therefore, must be under the statute, and penalty only can be recovered."

Chapter 135 of the Private and Special Laws of 1951 provides that "any person who operates a ferry between Beals and Jonesport without authorization of the Town of Beals * * * forfeits $4 for each time of transportation, to be recovered by the Town of Beals by an action of debt." The statute gives to the Town of Beals the legal right to operate a ferry, and the same statute gives a legal remedy if or when an unauthorized person operates a ferry in competition.

Neither the bill in equity nor the agreed statement of facts goes further than to state that the defendant has continuously operated and maintained a ferry, between Jonesport, Beals, and other portions of Moose-a-bec Reach since 1935, and is now operating. It is admitted that the defendant has made a substantial investment in boats and equipment, but he never had a franchise. There is no threatened, and serious, invasion of any of the plaintiff's rights in the future, if there has been an invasion in the past.

The court has authority to use the extraordinary power of injunction, when it is properly applied for, when justice urgently demands it, and when there is no legal remedy, or the remedy at law is inadequate. A cause of action that is capable of being determined at law, but is entertained in equity on jurisdiction grounds of equitable relief sought, if it appears from the evidence, or from lack of sufficient proof, that relief in equity cannot be granted, the court may be without jurisdiction and the bill in equity should be dismissed without prejudice. *Levesque* v. *Pelletier*, 144 Me. 245, 68 Atl. (2nd) 9; *Wolf* v. *W. S. Jordan Co.*, 146 Me. 374, 82 Atl. (2nd) 93.

Under the allegations in the bill in equity and the existing facts and circumstances that appear from this record, the court is of the opinion that the entry must be

*Bill dismissed without prejudice.*

*Mr. Chief Justice Murchie took part in consultation but died before the opinion was prepared by the court.