UNITY TELEPHONE COMPANY
*vs.*
DESIGN SERVICE COMPANY OF NEW YORK, INC.

Waldo.   Opinion, April 5, 1962.

126

*Brann & Isaacson,*
*Frank W. Linnell,*
*G. Curtis Webber,* for plaintiff.

*Herbert T. Silsby, II,* for defendant.

SITTING: WILLIAMSON, C. J., TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ. WEBBER, J., did not sit.

DUBORD, J.   This case is before us on defendant's appeal from the refusal of the presiding justice to grant its motion for judgment notwithstanding the verdict and for refusal to grant its motion for a new trial.

Sometime in 1955 the Unity Telephone Company, hereinafter referred to as "Unity," entered into a contract with the Rural Electrification Administration under the terms of which it was to obtain funds to finance conversion of its telephone plant to a dial system.   Subsequently, the defendant, Design Service Company, Inc., hereinafter referred to as "Design" was engaged to provide all engineering services for the project.   A written contract for such services was signed on January 18, 1956 by both parties.

Part of the project consisted of the construction of two small buildings, one in Albion and one in Newburgh, Maine, to house the dial equipment.   Plans and specifications for the project, including the two dial equipment buildings were prepared by Design and the entire project was under the

supervision of, and subject to inspection by, an engineer sent by Design to remain at the site until completion of the work.

The contract to construct the two dial equipment buildings was given to L. W. Lander, Inc., hereinafter referred to as "Lander."

The American Surety Company issued a performance bond to Unity in the usual form conditioned on proper and faithful performance of Lander's agreement.

In the declaration in Unity's writ, which was brought before the promulgation of the New Rules of Civil Procedure, Design was charged with liability based upon failure to comply with the provisions of its contract with Unity relating to supervision and inspection.

The record indicates that before Unity brought its action against Design, it had initiated an action for damages based upon improper construction, against Lander. Admittedly, Lander breached its contract in relation to the construction of the two small dial buildings.

The record does not indicate what disposition was made upon the court docket of Unity's suit against Lander. However, prior to the institution of the cause now before us, the American Surety Company, which had issued Lander's bond, entered into an agreement with Unity reading as follows:

> "American Surety Company, a company organized under the laws of the State of New York, has agreed to pay Unity Telephone Company the sum of $4500 on the following terms and conditions:
>
> "1. Unity Telephone Company is to retain the $900 held back by it from L. W. Lander, Inc. as liquidated damages for Lander's breach of its construction contract.

"2. Unity Telephone Company agrees, as a condition precedent to any payment by American Surety Company, to exhaust all of its legal remedies against Design Service Company for breach of the contract of supervision between the parties, and any recovery from its own service is to be applied against any amounts due from American Surety Company under the agreement."

Design filed an answer denying liability and setting forth specifically by way of defense that Unity was not the real party in interest, or at least was not the only real party in interest; that as a result of the agreement between Unity and American Surety Company, Unity had waived any claim it might have had against the defendant and had been paid for any damage to which it might be entitled.

Pursuant to this defense relating to the real party in interest, Design properly filed a motion that the American Surety Company be substituted as the real party in interest as plaintiff in the action instead of Unity Telephone Company, or in the alternative, that Lander and/or American Surety Company be joined as party plaintiff in the action.

The motion was denied.

Following the agreement between Unity and American Surety Company, the instant suit was instituted.

The case was tried before a jury which returned a verdict for the plaintiff in the amount of $5,244.72, which was the amount expended by Unity in constructing the foundations omitted by Lander.

During the course of the trial Design objected to the introduction of certain exhibits, objected to a portion of the charge of the presiding justice, and also objected to the refusal of the presiding justice to allow testimony by a witness for Design relating to custom and usage.

Design's motion for judgment *n.o.v.* and for a new trial, which motion was denied by the presiding justice reads as follows:

"The Defendant moves that the Court set aside the verdict entered April 28, 1960, (and the judgment entered thereon on April 28, 1960), and direct entry of judgment in accordance with the Defendant's motion for a directed verdict made at the close of all the evidence on the ground as stated in that motion that:—

"(1)   That the Plaintiff has not shown the duty of inspection.

"(2)   That the Plaintiff has not shown a breach of the duty of inspection.

"(3)   That the evidence is insufficient to sustain a verdict for the Plaintiff.

"(4)   That the Plaintiff has not shown that the Defendant failed to use reasonable effort to correct discovered defects.

"Alternatively, the Defendant moves that the Court set aside said verdict (and the judgment entered thereon) and grant the Defendant new trial on the following grounds:—

"(1)   The Court erred in admitting irrelevant, incompetent and prejudicial and hearsay exhibits offered by the Plaintiff over Defendant's objections as follows:— Plaintiff's Exhibit #21, Plaintiff's Exhibit #22, and Plaintiff's Exhibit #23.

"(2)   The Court erred in instructing the jury over the specific objections of the Defendant, that Certificate of Supervision and Inspection in Plaintiff's Exhibit #1 was not a part of the contract between the Plaintiff and the Defendant being said Plaintiff's Exhibit #1.

"(3)   The Court erred in not allowing into evidence the Defendant's cross-examination of Plaintiff's witness, Harry Brown, Manager of the

Plaintiff Corporation, that Plaintiff Corporation had made an agreement with the American Surety Company whereby the American Surety Company was to receive any recovery from the Defendant against any amount due from the American Surety Company to the Plaintiff.

"(4) The Court erred in not allowing into evidence the Defendant's testimony by its witness, Frank Geis, the custom and usage with respect to the quantum of inspection under contract between the Plaintiff and Defendant, being Plaintiff's Exhibit #1.

"(5) The Court erred in not allowing Defendant's motion that the American Surety Company be substituted as party plaintiff as the Plaintiff was not the real party in interest or not the only real party in interest because of an agreement made between the Plaintiff and the said American Surety Company whereby the said American Surety Company was to receive the proceeds of any recovery against the Defendant.

"(6) The Court erred in that the verdict was against the law and evidence.

"(7) The Court erred in that the verdict was against the weight of the evidence.

"(8) The Court erred in failing to rule on motion for directed verdict at close of Plaintiff's evidence.

"(9) The Court erred in not allowing the Defendant's motion to strike as prejudicial and hearsay, the testimony of the Plaintiff's witness, Harry Brown, (manifestly counsel meant Frank Geis) with respect to allegations by certain people in the REA that the fee for services rendered by the Defendant was excessive and percentage-wise was 75% more than average.

"(10) The Court erred in ruling over the Defendant's objection that the Plaintiff's witness, Glines, Secretary and Treasurer of the Plaintiff

> Corporation, that Plaintiff had performed all its part of the contract between the Plaintiff and Defendant, marked Plaintiff's Exhibit #1, on the part of the Plaintiff to be performed."

We propose to first dispose of the issues raised in Design's motion for a new trial relating to questions of evidence.

(1)  The first objection related to the admission of plaintiff's exhibits 21, 22, and 23.  Plaintiff's exhibit 21, was a letter written by an official of the Rural Electrification Administration to Design.  Plaintiff's exhibit 22, was a reply to this letter and plaintiff's exhibit 23, was a letter sent by Unity to Design with particular reference to the contents of plaintiff's exhibit 22.  Design objected to the admission of these exhibits on the theory that particularly exhibit 21 was hearsay.  Exhibit 21 was admitted by the presiding justice as a basis for the admission of the other two letters.  We perceive no error in this action:

> "Where a writing offered *refers to another writing*, the latter should also be put in at the same time, provided the reference is such as to make it probable that the latter is requisite to a full understanding of the effect of the former.  The same principle would apply to another writing, not expressly referred to, but *necessary* by the nature of the documents to a proper understanding of the one offered.  Much, therefore, will depend upon the circumstances of each case and the character of each document, and no fixed rule can fairly be laid down; the trial Court's discretion should control."  Wigmore on Evidence, Vol. VII, § 2104, Page 502.

The court's discretion was properly exercised and Design takes nothing by this objection.

(2)  The second objection relates to instructions given by the presiding justice in his charge relating to the certificate of supervision and inspection.

The record indicates that at the conclusion of the charge to the jury, counsel for Design stated: "We would like our objection noted to the part of the charge as to the certificate of inspection." No reason was assigned for the objection so that it would appear that there had been no compliance with the provisions of M. R. C. P. 51 (b). However, even assuming that a reason for the objection had been specified, we see no error in this portion of the charge of the presiding justice. Design takes nothing by this objection.

(3) We pass temporarily over objection number 3.

(4) Contention is made that the court erred in refusing to allow the testimony of a witness relating to custom and usage with respect to the quantum of inspection under the contract between Unity and Design.

The rule appears to be well settled that when a contract is clear and unambiguous, custom and usage may not be proved. Custom and usage may be proved to ascertain the intention of the parties only when it cannot be ascertained by the terms of the contract. 55 Am. Jur., Usages & Custom, § 30; *Gooding* v. *Northwestern Mutual Life Insurance Company*, 110 Me. 69, 85 A. 391; *Everett* v. *Rand*, 152 Me. 405, 131 A. (2nd) 205.

A study of the contract between Unity and Design leaves no uncertainty or ambiguity.

(5), (6), and (7) Subsequent consideration will be given to these alleged errors.

(8) Contention is made that the court erred in failing to rule on a motion for a directed verdict at the close of plaintiff's evidence. The New Rules of Civil Procedure do not seem to cover the point as to whether or not the presiding justice may reserve his ruling. However, in the instant case no objection was made on the part of counsel

for the defendant to the failure of the presiding justice to rule, so that the failure to rule may well be construed as having been waived. Moreover, failure to rule may also be construed as a denial of the motion. In any event, Design was not prejudiced by the failure of the presiding justice to act.

(9) Contention of error is made for the reason that the presiding justice refused to strike out as prejudicial and hearsay the testimony of one of the plaintiff's witnesses. While perhaps this evidence was not strictly admissible, its admission and failure to strike was a harmless error.

(10) One of the witnesses for Unity was permitted to answer that his company had performed its part of the contract between Unity and Design. Objection was made to this line of testimony. Bearing in mind that this witness was in court and subject to cross-examination, we perceive no error in this procedure.

In its motion for judgment *n.o.v.*, Design sets forth that the plaintiff has not shown a duty on the part of Design to inspect; has not shown a breach of the duty of inspection, that it was not shown that the defendant failed to use reasonable efforts to correct discovered defects and that the evidence is insufficient to sustain a verdict for the plaintiff. Similar objections are raised in the motion for a new trial to the effect that the verdict was against the law and the evidence and against the weight of the evidence. A careful study of all of the evidence satisfies us that the verdict of the jury was warranted. There was ample proof of breach of Design's agreement to supervise and inspect the project. The amount of the verdict is also supported by the evidence. Consequently, the ruling of the presiding justice in denying the motion for judgment *n.o.v.* and for a new trial in respect to the alleged errors so far discussed was proper. This paragraph disposes of the errors alleged in

the motion for judgment *n.o.v.* and of errors numbered (6) and (7) filed under the motion for a new trial.

We direct our attention now to the only remaining issues which concern the motion of Design that the American Surety Company be made a party plaintiff as the real party in interest (alleged error #5); and that counsel for Design should have been permitted to cross-examine the manager of Unity concerning the agreement between Unity and American Surety Company (alleged error #3).

We have already pointed out that the instant action was instituted by Unity against Design following the execution of an agreement between American Surety Company and Unity providing, in substance, that American Surety Company in its capacity as surety for Lander, would pay Unity the sum of $4500.00 upon the condition that Unity should exhaust its remedies against Design and give credit to the American Surety Company for whatever recovery it might obtain against Design. In other words, if recovery were obtained for an amount less than $4500.00, the liability of American Surety Company to Unity would be reduced proportionately and if the recovery were equal to or in excess of $4500.00, the liability of American Surety Company would be exonerated.

In its answer, Design pleaded that the American Surety Company was the real party in interest and then at the proper time filed a motion addressed to the presiding justice praying that the American Surety Company be made a party plaintiff, which motion was denied.

We are, therefore, presented with a most unusual and novel set of facts, which seems to be without precedent in this jurisdiction.

We start out with the premise that we are involved with two contracts. One is the construction contract between

Unity and Lander, and the other is the contract between Unity and Design relating to supervision and inspection. Under the provisions of the contract between Unity and Lander, Lander was under an obligation to comply with the requirements of proper construction. Likewise, Design was under a legal duty of properly supervising and inspecting the work performed by Lander. Failure on the part of Lander to comply with its obligation would and did give rise to an action for damages on the part of Unity. Failure of suitable inspection and supervision by Design would also give Unity a cause of action. The liability on the part of Lander and Design was not joint, but several, and many difficult and unusual questions relating to contribution and subrogation are presented which it may be unnecessary for us to resolve in this opinion.

Design filed its motion asking that the American Surety Company be made a party plaintiff under the provisions of M. R. C. P. 17 (a), which reads as follows:

> "(a)  Real Party in Interest.  Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute so provides, an action for the use or benefit of another shall be brought in the name of the State of Maine. An insurer who has paid all or part of a loss may sue in the name of the assured to whose rights it is subrogated."

Manifestly, the last sentence in the above rule is designed to continue the policy which has been in force in this jurisdiction to the effect that the names of insurance companies are not ordinarily to be mentioned in litigation.

In the commentary in Maine Civil Practice, Field and McKusick, § 17.4, it is stated that probably a bonding com-

pany which is suing by way of subrogation to recoup its loss on a fidelity bond is to be regarded as an insurer within the purview of Rule 17 (a).

However, we are of the opinion that the situation created by the uncommon set of circumstances brought about by the agreement between American Surety Company and Unity is not analogous.

Undoubtedly the last sentence in M. R. C. P. 17 (a) provides for the ordinary situation where, for example, a liability insurance company has paid its insured a collision loss brought about in an accident with a third party. The liability company may then seek to recoup its loss by bringing action in the name of its insured.

Counsel for the plaintiff, in support of its position that the surety company is not a party in interest, argues that the situation created is not unlike that of the so-called loan receipt procedure. By means of this device an insurance company loans to the assured the amount due under its policy instead of paying the claim outright. The loan is made on condition that the assured promptly bring action in his own name to enforce his rights against a third party stemming from the same transaction. The insured pledges with the insurance company as security for the loan any recovery he may secure against the third person. If the suit fails, the loan is never repaid. We do not consider the procedure relating to loan receipts in any way analogous to the situation now before us.

In sum and in substance, we are constrained to state that as a result of the agreement between the American Surety Company and Unity a serious problem of inequity and injustice has been created and in its creation, Unity is not without being subject to censure.

If this judgment is permitted to stand, then the court is lending its approval to a situation where a bonding com-

pany, which has been paid a premium to insure the engagements of Lander, is to be allowed to go free of liability even though its insured may well have been in greater degree responsible for the loss which was suffered by Unity.

It seems unnecessary for us to decide whether the agreement between Unity and American Surety Company was in the nature of an assignment of Unity's claim against Design or whether the American Surety Company stood in the position of a subrogee of any rights that Unity might have had against Design.

However, the agreement between Unity and the insurance company has all of the aspects of an assignment, although it does not contain words of an assignment. If the agreement is construed as an assignment, then surely the American Surety Company was the real party in interest, and if it can be construed that as a result of the agreement, the American Surety Company has been placed in the position of a subrogee, the result is the same.

This is clearly a case where the court may apply equitable principles and intervene in order that justice may be done.

It is a well known maxim that equity will not suffer a wrong without a remedy, and absence of precedents does not prevent the application of equitable doctrines.

> "The absence of precedents, or novelty in incident, presents no obstacle to the exercise of the jurisdiction of a court of equity, and to the award of relief in a proper case. It is the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties." 30 C. J. S., Equity § 12.

Another maxim is that equality is equity and this principle is the source of equitable doctrines relating to contribution.

"It is a familiar doctrine of the law, that when a creditor has a single claim against several persons, each of such debtors is regarded as so completely and individually liable that the creditor may enforce payment of the entire demand from any one of the number. The law will not interfere with the action of the creditor; it will not compel him in any manner to obtain satisfaction from all of the debtors *pari passu*; and after one of the number had thus been obliged to pay the whole amount, the ancient common law, prior to its adoption of doctrines borrowed from equity, failed to give him any right of recourse upon his co-debtors by means of which the burden might finally be distributed among them all in just proportions. The rules of the modern law giving such right of reimbursement are a direct importation from the equity jurisprudence. * * * * Under all these conditions of fact, equity proceeded upon a very different principle, upon the principle that equality is equity, that the right or burden should be equalized among all the persons entitled to participate." Pomeroy's Equity Jurisprudence, Vol. 2, Fifth Edition, § 406.

See also Pomeroy's Equity Jurisprudence, Vol. 4, Fifth Edition, § 1418.

"Contribution originated in equity, and is based on natural justice. It is generally held not to rest upon contract express or implied. It applies where equity between the parties requires equality of burden. It is the mode by which equity compels the ultimate discharge of a debt by the one who as a matter of right should pay it." *Gates* v. *Fauvre*, Indiana, 119 N. E. 155, 162.

As a result of the most careful consideration of the unprecedented situation now before us, we are convinced that equity and justice cannot be rendered without a new trial in which the American Surety Company may appear in its real role as the party in interest. Only in this manner can

the rights of all the parties involved be adjusted in one decree. By no other mode can complete relief be accorded.

It is, therefore, our ruling that the motion of Design that the American Surety Company should have been joined as a party plaintiff was erroneously denied, and that Design's objection should now be sustained.

Having thus ruled that the American Surety Company should be made a party plaintiff, then there was also error in refusing counsel for Design an opportunity to cross-examine the Manager of Unity concerning the agreement between Unity and the American Surety Company. This allegation of error on the part of Design should also be sustained.

The entry will be:

*Appeal sustained.*

*New trial granted.*

*Costs to be awarded the Defendant.*