Joseph A. DASHA III, by his guardian and next friend, Margaret S. Dasha

v.

**MAINE MEDICAL CENTER.**

Supreme Judicial Court of Maine.

Argued Nov. 16, 1994.
Decided Oct. 4, 1995.

Terrence D. Garmey (orally), Robert H. Furbish, Smith Elliott Smith & Garmey, P.A., Portland, for Plaintiff.

Gérald F. Petruccelli (orally), Petruccelli & Martin, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

CLIFFORD, Justice.

Pursuant to 4 M.R.S.A. § 57 (1989) and M.R.Civ.P. 76B,[1] the United States District

1. 4 M.R.S.A. § 57 (1989) provides in pertinent part:

When it shall appear to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there

Court for the District of Maine (*Carter, C.J.*) has certified the following question of state law to this court:

> Whether equitable principles estop a defendant from pleading the statute of limitations as a bar to a medical malpractice action when that defendant's alleged negligent treatment of a plaintiff's brain caused damage such that the plaintiff was deprived of the ability to recognize and file a timely cause of action?

Pursuant to M.R.Civ.P. 76B(b), the United States District Court has prepared a statement of material facts established by the parties in the defendant's pending motion for a summary judgment. Those facts disclose that on June 13, 1988, Dr. Joseph Stocks, a pathologist at Maine Medical Center (MMC), diagnosed Joseph Dasha with a fatal brain tumor, glioblastoma multiforme. Dasha underwent brain surgery at MMC during which some or all of the tumor was removed.

Based on the diagnosis and prognosis provided by MMC, Dasha was advised to undergo a series of radiation treatments for the purpose of prolonging his life. ·The prognosis for survival associated with glioblastoma multiforme was about six months if untreated and eighteen months to two years if treated. Having agreed to undergo radiation treatment, Dasha underwent approximately thirty radiation treatments from July 5, 1988 to August 16, 1988, and received about 6000 rads of external beam irradiation. The initial diagnosis of the tumor and prognosis for survival were confirmed on August 1, 1988 by a neuropathologist, Dr. Lester Stephen Adelman of the New England Medical Center, to whom slides of the tumor were sent for classification.

During and immediately after the treatment, Dasha was competent and in control of his faculties. Shortly thereafter, however, his abilities underwent a decline resulting in his eventual incompetence due to severe brain damage. For purposes of the motion for a summary judgment, the parties have agreed that Dasha has been mentally incompetent since March 1989. On March 2, 1989, Dasha executed a power-of-attorney in favor of his sister, Margaret S. Dasha, and she has handled his affairs since that time.

In November 1990, Dr. Barbara Shapiro, who was treating Dasha, requested that Dr. Adelman again review the tissue sample of Dasha's brain tumor. As a result of this review, Dr. Adelman revised his earlier diagnosis and identified the tumor as a ganglioglioma, which is relatively benign. Dr. Shapiro informed Margaret Dasha of the revised diagnosis on March 1, 1991, approximately two years and nine months after the misdiagnosis. At this time, Dasha's brain damage was so severe that he was unable to understand either the nature of the cause of his injury or the legal implications of the original misdiagnosis.

On May 9, 1992, three years and eleven months after the misdiagnosis, Margaret Dasha notified MMC of her intent to file a lawsuit on behalf of her brother. On July 22, 1992, Dasha was declared legally incompetent and his sister was appointed his legal guardian. In MMC's answer to Dasha's complaint, it asserted the statute of limitations as an affirmative defense.

A cause of action for medical malpractice "accrues on the date of the act or omission giving rise to the injury." 24 M.R.S.A. § 2902 (1990). Therefore, the cause of action accrued on the date of the alleged misdiagnosis, June 13, 1988. Because this action was not commenced until May 9, 1992, the parties agree that this action was not filed within the three-year period prescribed for medical malpractice claims by section 2902. The parties also agree that Dasha does not come within the provisions of 14 M.R.S.A. § 853 (Supp. 1994), the tolling statute, because he was not mentally ill *when* the cause of action accrued. It is undisputed that Dasha was fully compe-

are involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this State to the Supreme Judicial Court for in-

structions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as a law court may, by written opinion, answer.

M.R.Civ.P. 76B establishes procedure in certification situations.

tent at the time of the misdiagnosis and during the radiation treatment.

Dasha contends, however, that MMC should be barred from raising the statute of limitations as an affirmative defense based on principles of equitable estoppel because its own negligent diagnosis and prognosis led to the radiation treatment of his brain that rendered him incapable of understanding or asserting his legal rights. Finding none of this Court's precedents controlling, the United States District Court for the District of Maine certified the question. Exercise of our jurisdiction is proper in this case because there are no clear controlling precedents and our answer will, in one alternative, be determinative of the case. *See Lovell v. One Bancorp*, 614 A.2d 56 (Me.1992). We answer the question in the negative.

## I.

■ In *Hanusek v. Southern Maine Medical Ctr.*, 584 A.2d 634 (Me.1990), we recognized that estoppel may be used to prevent the affirmative defense of the statute of limitations if the elements of estoppel are present. *Id.* at 636. In explaining estoppel, we have previously stated:

> The gist of an estoppel barring the defendant from invoking the defense of the statute of limitations is that the defendant has conducted himself in a manner which actually induces the plaintiff not to take timely legal action on a claim. The plaintiff thus relies to his detriment on the conduct of the defendant by failing to seek legal redress while the doors to the courthouse remain open to him. Only upon a demonstration that the plaintiff had in fact intended to seek legal redress on his claim during the prescriptive period can his failure to file suit be specifically attributed to the defendant's conduct.

*Townsend v. Appel*, 446 A.2d 1132, 1134 (Me. 1982) (citations omitted); *see also Vacuum Sys., Inc. v. Bridge Constr. Co.*, 632 A.2d 442,

444 (Me.1993); *Dugan v. Martel*, 588 A.2d 744, 746–47 (Me.1991); *Hanusek*, 584 A.2d at 636. Equitable estoppel "is a doctrine that should be 'carefully and sparingly applied.'" *Vacuum Sys. Inc.*, 632 A.2d at 444 (quoting *Milliken v. Buswell*, 313 A.2d 111, 119 (Me. 1973)). "Proper application of the doctrine of equitable estoppel rests on the factual determination that the declarations or acts relied upon must have induced the party seeking to enforce the estoppel to do what resulted to his detriment, and what he would not otherwise have done." *Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 105–06 (Me.1984) (citations omitted).

■ The stipulated facts of this case do not meet the elements of equitable estoppel. First, MMC made no affirmative misrepresentation, as required to support the application of equitable estoppel. *Anderson v. Commissioner of Dept. of Human Servs.*, 489 A.2d 1094, 1099 (Me.1985). Although a claim of equitable estoppel can be supported by an act of negligence that is the equivalent of fraud, *Pino v. Maplewood Packing Co.*, 375 A.2d 534, 539 (Me.1977), the misdiagnosis by MMC is not the equivalent of fraud sufficient to support the assertion of equitable estoppel. Dasha relied on the misdiagnosis to seek radiation treatments, but he did not rely on a representation of MMC to decide to forego seeking legal redress. Nothing in the record demonstrates that Dasha "in fact intended to seek legal redress on his claim during the prescriptive period." *Townsend*, 446 A.2d at 1134; *see also Dugan*, 588 A.2d at 747 (defendant not estopped from asserting statute of limitations when no showing that the conduct actually induced plaintiff to delay bringing suit).

## II.

■ Dasha also asks that we toll the statute of limitations during the period of his mental incapacity, starting with the date he became incompetent.[2] Although we recog-

2. The doctrine of equitable estoppel is distinct from the doctrine of equitable tolling. In cases of equitable estoppel, the statute of limitations has expired and the defendant asserts the running of the statute of limitations as a defense. The defendant, however, is estopped from bene-

fitting from the statute of limitations as a defense because the defendant has acted in such a way as to cause the claimant to forego filing a timely cause of action. *See Vacuum Sys., Inc. v. Bridge Constr. Co.*, 632 A.2d 442, 444 (Me.1993); *Hanusek v. Southern Me. Medical Ctr.*, 584 A.2d 634,

nize that this has been done under similar circumstances, *see Zeidler v. United States,* 601 F.2d 527 (10th Cir.1979); *Dundon v. United States,* 559 F.Supp. 469 (E.D.N.Y. 1983), we decline to do so in this case, because in contrast to the circumstances existing in the cited cases, our Legislature has clearly spoken in restricting the instances in which a medical malpractice action can be filed beyond the general three-year statute of limitations.

The Legislature has explicitly outlined the contours of the statute of limitations in medical malpractice actions, and has not left room for us to carve out an exception to these rules. *See Choroszy v. Tso,* 647 A.2d 803, 808 (Me.1994) ("Once the Legislature has evaluated those arguments [regarding the statute of limitations and the discovery rule] and made a policy choice, however, we cannot adopt the opposite view unless the legislative action is unconstitutional."). Unlike the case in *Myrick v. James,* 444 A.2d 987, 997 (Me. 1982), this is not a situation where the Legislature has left it to this Court to define when a medical malpractice action accrues. *See also Bolton v. Caine,* 541 A.2d 924, 926 & n. 3 (Me.1988); *Black v. Ward,* 549 A.2d 371, 372 (Me.1988) (Legislatively enacted discovery rule applies only to medical malpractice case filed on or after effective date of new legislation). The Legislature has decided when a cause of action may be tolled, 14 M.R.S.A. §§ 853, 859 (Supp.1994), and has specified the very limited circumstances when the discovery rule may be used, 24 M.R.S.A. § 2902 (1990). *See* L.D. 2400 Statement of Fact (112th Legis.1985) (revised draft) ("The new draft amends the existing statutes of limitations applicable to medical malpractice actions by ... [e]liminating the so-called 'discovery rule' in all cases except 'foreign object' surgical cases."). While the statutory scheme may be deemed unfair or harsh, we decline to circumvent it when the Legislature has explicitly decided the issue, and has "divest[ed] this Court of its responsibility to define when a ... malpractice action accrues." *Myrick,* 444 A.2d at 991; *see also*

*Inhabitants of Town of Beals v. Beal,* 149 Me. 19, 24, 98 A.2d 552 (1953) (" 'Whenever a legal right is wholly created by statute, and a legal remedy for its violation is also given by the same statute, a court of equity has no authority to interfere with its reliefs, even though the statutory remedy is difficult, uncertain, and incomplete.' ") (quoting *Perry v. Dodge,* 144 Me. 219, 221, 67 A.2d 425 (Me. 1949)).

In conclusion, we answer the certified question in the negative.

WATHEN, C.J., and ROBERTS, GLASSMAN, and RUDMAN, JJ., concurring.

LIPEZ, Justice, dissenting.

Historically, the courts have used equitable principles to ameliorate the harshness of the law. We cannot ameliorate such harshness in direct contravention of a statute, such as 14 M.R.S.A. § 853 (setting forth the limited circumstances that justify tolling a statute of limitations). *See Inhabitants of the Town of Beals v. Beal,* 149 Me. 19, 98 A.2d 552, 555 (1953). We can, however, apply equitable principles to prevent a defendant from using fraudulent conduct, or the equivalent thereof, to invoke a statutory defense in a manner so unjust that the Legislature could not have intended the result. Given these considerations, I agree with that portion of the Court's decision concluding that it is improper to equitably toll the statute of limitations in this case. I do not agree with the Court's conclusion that this is an improper case for application of the doctrine of equitable estoppel. Accordingly, I respectfully dissent.

As stated in the opinion of the Court, we have outlined the elements of equitable estoppel as follows:

> The gist of an estoppel barring the defendant from invoking the defense of the statute of limitations is that the defendant has conducted himself in a manner which actually induces the plaintiff not to take timely legal action on a claim. The plaintiff thus

637 (Me.1990). In contrast, in cases involving the doctrine of equitable tolling, the defendant does not have the statute of limitations as a valid defense because it has not yet run. Rather, the

statute of limitations is tolled when strict application of the statute of limitations would be inequitable. *Lambert v. United States,* 44 F.3d 296, 298 (5th Cir.1995).

relies to his detriment on the conduct of the defendant, by failing to seek legal redress while the doors of the courthouse remain open to him. Only upon a demonstration that the plaintiff had in fact intended to seek legal redress on his claim during the prescriptive period can his failure to file suit be specifically attributed to the defendant's conduct.

*Townsend v. Appel*, 446 A.2d 1132, 1134 (Me. 1982) (citations omitted). We have also said that a claim of equitable estoppel can be based on an act of negligence that is the equivalent of fraud. *Pino v. Maplewood Packing Co.*, 375 A.2d 534, 539 (Me.1977). Indeed, we explained in *Pino* that:

> [e]stoppel flows from the actual consequences produced by the conduct of A upon B regardless of whether A subjectively intended the consequences, and which resulted because, objectively evaluated, B has justifiably relied upon A's conduct.

*Id.* at 538–39.

The stipulated facts describe conduct on the part of MMC that is the equivalent of fraud. The fraudulent conduct of a defendant, relied upon by a plaintiff, prevents the plaintiff from seeking legal redress. In this case, the negligent conduct of MMC prevented Dasha from seeking legal redress. MMC misdiagnosed the severity of Dasha's brain tumor and subjected him to massive radiation treatments, causing him to become incompetent and unable to file a cause of action. Dasha's agreement to undergo the radiation treatments was the detrimental reliance required by equitable estoppel. Objectively evaluated, MMC's conduct effectively prevented Dasha from filing a timely cause of action, in a manner far more devastating than fraud. The conduct of MMC made Dasha incompetent and unable even to understand that he had a cause of action.[1]

The intent to seek legal redress during the statute of limitations period, another requirement of equitable estoppel noted by the Court, is absent from this case only because the conduct of MMC left Dasha incompetent and hence unable to form any intention. It is that direct link between the conduct of MMC and the resulting incompetence of Dasha that makes this case unique and that requires the application of equity to avoid an unjust result.[2] Put most simply, the defendant should not be able to take advantage of this unique situation.[3] *See Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232, 79 S.Ct.

---

1. Typically in equitable estoppel cases, the defendant incurs liability and subsequently commits an act inducing the plaintiff not to bring a cause of action. *See, e.g., Hanusek v. Southern Maine Medical Ctr.*, 584 A.2d 634 (Me.1990) (after receiving allegedly negligent treatment, plaintiff relied on representation of nurse in not bringing timely action); *Pino v. Maplewood Packing Co.*, 375 A.2d 534 (Me.1977) (after sustaining injury, employee did not file timely worker's compensation petition because nurse told him his claim was covered by informing employer); *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (after sustaining damages, plaintiff misled to believe he could bring action any time within seven years). This case is not unlike the paradigm case for equitable estoppel. The initial act of negligence was the misdiagnosis and the radiation treatments were the subsequent act of negligence, equivalent to fraud, which caused Dasha not to bring a suit.

2. To have a cause of action in a medical malpractice case, the claimant must have sustained damages. Dasha's injury is the loss of his competence, the very thing he needed to realize he had a cause of action. It is the tragic paradox of this case that all the elements of Dasha's cause of action were not present until he lost his competence and was therefore unable to file a cause of action.

3. The fact that Dasha executed a power of attorney in favor of his sister, Margaret S. Dasha, on March 2, 1989, does not preclude application of the doctrine of equitable estoppel. In equitable tolling cases, the existence of a power of attorney conferred by a person before the onset of incapacity does not preclude application of the tolling statute:

> The aim of the tolling statute is "to relieve from the strict time restrictions any person who actually lacks the ability and capacity, due to mental affliction, to pursue his lawful rights ..." (citations omitted) The statute does not condition tolling on the absence of others who may be legally authorized to act for the insane person.

*Kisselbach v. County of Camden*, 271 N.J.Super. 558, 638 A.2d 1383, 1387 (1994). That same principle should apply to this equitable estoppel case. The power of attorney conferred on Margaret Dasha the authority to sue when she learned of the misdiagnosis approximately two years and nine months after it occurred, not the obligation to do so. *Id.*

760, 762, 3 L.Ed.2d 770 (1959) (deeply rooted maxim states that "no man may take advantage of his own wrong").

There is a legitimate concern that a hard case makes bad law. That concern is misplaced here. All statutes of limitations are arbitrary and cause unredressed wrongs. We accept that arbitrariness and those costs because of the importance of other goals advanced by the statutes. Implicit in any statute of limitations, however, is the notion that an individual subject to the statute has the capacity for self-protection. Even in cases of medical misdiagnosis, the misdiagnosed patient at least has the capacity to seek a second opinion or to act upon symptoms that remain troublesome. That capacity for self-protection arguably moderates the harshness of the rule that begins the limitations period with the act of misdiagnosis.

In this case, Dasha's capacity for any degree of self-protection within the statute of limitations period was destroyed by the very party from whom he seeks redress. The application of the statute in this case has no redeeming rationality. *See Kyle v. Green Acres at Verona, Inc.,* 44 N.J. 100, 207 A.2d 513, 519 (1965) (if plaintiff's insanity developed on or after date of accrual and resulted from defendant's acts, then justice requires that defendant "not be permitted to cloak himself with the garb of the statute of limitations"). The lack of a direct precedent should not prevent the application of equity. Indeed, "[i]t is the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties." *Unity Tel. Co. v. Design Serv. Co. of New York,* 158 Me. 125, 137, 179 A.2d 804 (1962) (citation omitted).

I would answer the certified question in the affirmative.