STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-93-276
TDW - CUM - 3/15/2000

DONALD DOW,

      Plaintiff

  v.

JAMES H. MAIER,

      Defendant

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

Before the court is defendant James Maier's motion for summary judgment based on the statute of limitations. A previous motion for summary judgment based on the statute of limitations was denied by the court (Saufley, J.) while this case was pending before a prelitigation screening panel pursuant to 24 M.R.S.A. §2851 et seq.[1] See Order filed October 3, 1995. Dr. Maier has now renewed that motion, contending that information obtained in expert discovery establishes that Dow cannot take advantage of the tolling provisions of 14 M.R.S.A. §§853 and 859 (Supp. 1999) and that Dow's claims against Dr. Maier are therefore barred by the statute of limitations.

---

[1] The docket sheet reflects that a notice of claim alleging that Dr. Maier and three other doctors had engaged in medical malpractice was originally filed in this case on March 12, 1993. The docket sheet further reflects that after more than a year, including a 90-day stay sought by plaintiff, a panel chairman was appointed by order dated April 27, 1994. After some discovery had been conducted, Dow dismissed his claims against all of the respondent physicians except Dr. Maier on September 1, 1994. On November 22, 1994, a motion to withdraw filed by Dow's initial counsel was granted. Dow represented himself during subsequent proceedings before the Prelitigation Screening Panel until May of 1997, when present counsel appeared for Dow in the panel proceeding. Shortly thereafter Dow's notice of claim was dismissed in July of 1997 by the Panel Chair because Dow had failed to name a psychiatric expert on the issue of the relevant standard of care despite various deadlines. During the period from November 1994 to July 1997 while Dow's claim was pending before the Screening Panel, the parties litigated both the statute of limitations motion noted above and a second motion for summary judgment, which was denied on January 21, 1997. Both of the summary judgment motions had been referred to the superior court pursuant to 24 M.R.S.A. §2853(5).

It is undisputed that Dr. Maier started treating Dow in December of 1978 and ceased treating Dow in May of 1983. Dow filed his notice of claim almost 10 years later in 1993, so unless 14 M.R.S.A. §§853 or 859 are applicable, this action is barred by the statute of limitations.

1.    14 M.R.S.A. §853

Having reviewed the portions of the record relied upon by the parties on defendant's motion for summary judgment, the court concludes that there are disputed issues for trial with respect to plaintiff's contention that the statute of limitations was tolled due to mental illness within the meaning of 14 M.R.S.A. §853.[2] This issue will be analyzed in the context of Dow's malpractice claim because his claims for assault and battery and for intentional infliction of emotional distress are based upon the same alleged conduct that constitutes the alleged malpractice, and all those causes of action accrued at the same time. Dow's misrepresentation and fraud claims will be analyzed separately below.

Under Dasha v. Maine Medical Center, 665 A.2d 993 (Me. 1995), Dow's cause of action for malpractice is barred unless he was mentally ill within the meaning of 14 M.R.S.A. §853[3] when his cause of action accrued. The import of Dasha is that Dow cannot prevail under 853 if he became mentally ill any time after his cause of

---

[2]   Dr. Maier's motion is based on the theory that it is undisputed that Dow was not mentally ill when his cause of action accrued. To prevail under §853, Dow will also have to show that he filed his notice of claim within the appropriate limitations period after he ceased to be mentally ill. That issue is not addressed in the pending motion.

[3]   See Bowden v. Grindle, 675 A.2d 968, 971 (Me. 1996); Chasse v. Mazerolle, 580 A.2d 155, 157 (Me. 1990).

2

action accrued, even if he can prove that his mental illness was caused by Dr. Maier's malpractice and that his subsequent mental illness prevented him from filing suit. In this case it is alleged that Dr. Maier negligently prescribed medication for Dow beginning in February 1979, that his malpractice should have been apparent no later than July 1980, and that his malpractice continued through May 1983. Given those allegations, the dispositive question is when Dow's cause of action accrued.

Dr. Maier argues that, accepting the testimony of Dow's expert, Dr. Nelson, the alleged malpractice began at the latest in July 1980, when Dr. Nelson testified that Dow's addiction should have been apparent, and Dow's cause of action therefore accrued at that time. Dr. Maier further argues that because there is no evidence Dow was mentally ill in July 1980, Dow's action should be dismissed. In the court's view, this ignores the fact that there is a triable issue as to whether Dr. Maier committed malpractice subsequent occasions when he continued to prescribe the allegedly addictive medication after July 1980. Because Dr. Maier continued to prescribe medication in a manner that allegedly constituted malpractice until May 1983, Dow's cause of action continued to accrue until that time, and Dr. Maier's motion for summary judgment must be denied if there is a factual dispute as to whether Dow became mentally ill at any point prior to May 1983.

As Justice Saufley concluded in her October, 1995 order, there is in fact a disputed issue for trial as to whether Dow was mentally ill sometime prior to the time when Dr. Maier's alleged negligence in prescribing medication ceased in May

3

1983. <u>See</u> Order filed October 3, 1995 at 6-7. Beyond that, in an affidavit executed in September 1999, Dow states that he was seriously mentally ill by October or November of 1982, and the record reflects that both medications which Dow now challenges -- Ativan and Dexedrine -- were prescribed by Dr. Maier after that date.[4] This is sufficient to require the denial of Dr. Maier's motion.

The remaining question -- which does not need to be reached on this motion -- is whether, if Dow is able to prove that Dr. Maier engaged in continuous acts of malpractice from either February 1979 or July 1980 through the beginning of May 1983, and Dow is also able to prove that he became mentally ill within the meaning of 14 M.R.S.A. §853 prior to May 1983, Dow may recover for all of Dr. Maier's acts of malpractice or only for those that postdate the onset of Dow's mental disability. This turns on whether the court should adopt either a "continuous tort" or "continuous treatment" theory -- theories that have not been ruled upon by the Law Court[5] but that Dr. Maier argues are inconsistent with 24 M.R.S.A. §2902. The court will defer any ruling on this issue at this time.

---

[4] Dr. Maier has moved to strike Dow's September 1999 affidavit on the ground that Dow cannot create an issue of fact by filing an affidavit that contradicts his deposition testimony. <u>See</u> <u>Zip Lube v. Coastal Savings Bank</u>, 1998 ME 81, ¶10, 709 A.2d 733, 735. The problem with this argument is that Dr. Maier has not pointed to any specific deposition testimony which is contradicted by Dow's September 1999 affidavit. Indeed, in Dr. Maier's motion for summary judgment Dr. Maier notes that Dow has "never provided record evidence of when he suffered from the mental disability that he contends tolls the statute of limitations in this case". Rule 7(d) Statement ¶15. Dr. Maier's motion to strike is denied.

[5] <u>Cf.</u> <u>Nevin v. Union Trust Co.</u>, 1999 ME 47, ¶¶36-37, 726 A.2d 694, 700-01; <u>Larochelle v. Hodsdon</u>, 1997 ME 53, ¶9, 690 A.2d 986, 988 (cases in which Law Court expressly did not rule on the viability of a "continuing representation" theory in the analogous context of legal malpractice actions).

4

## 2.     14 M.R.S.A. §859

Dow also argues that he may avoid the statute of limitations bar by virtue of 14 M.R.S.A. §859, which provides that the statute of limitations runs from discovery in the case of either fraud or fraudulent concealment.[6] Dow has alleged fraud in this case consisting of Dr. Maier's alleged misrepresentations as to the non-addictive nature of the medication he prescribed.

At the outset, Dr. Maier argues that Dow is foreclosed from relying on §859 based on the law of the case doctrine because Justice Saufley previously denied Dow leave to amend his notice of claim to make an argument based on §859 at the time Dow filed his opposition to Dr. Maier's first motion for summary judgment. See docket sheet entry for July 28, 1995. As far as the court can determine, however, that ruling was based on Justice Saufley's reluctance to allow Dow to inject a new issue into the case after Dr. Maier's motion for summary judgment had already been filed. That consideration no longer applies. At this point in the case the section 859 issue is no longer being injected at the last minute but has been present in the case at least since the filing of the complaint in August 1997. See Complaint ¶¶32-33, 35.

---

[6]     Relying on the 1916 decision of the Law Court in Bither v. Packard, 115 Me. 306, 98 A. 929 (1916), Dow also argues that the statute of limitations in this case should be tolled due to "undue influence" on the part of Dr. Maier. "Undue influence" is not a basis for tolling under 14 M.R.S.A. §859, so the initial question presented by this contention is whether the common law theory that a claim may be tolled due to undue influence survives the enactment of specific tolling provisions such as 14 M.R.S.A. §§853 and 859.  That general issue need not be reached in the instant case since the form of "undue influence" at issue in the Bither case consisted of duress exerted by a person who had been the plaintiff's father figure and no similar form of undue influence is present in the instant case. In this case, if any undue influence existed, it resulted from either the doctor patient relationship or from the addiction that allegedly resulted from the medication prescribed by Dr. Maier. The implications of the doctor patient relationship are better explored, in the court's view, in considering whether a "continuous treatment" theory should be adopted here. Moreover, the contention that undue influence resulted from addiction cannot be squared with Dasha. For these reasons, the court concludes that Dow's claim of undue influence does not afford any independent basis to toll the statute of limitations.

With respect to his claim of malpractice, Dow can take advantage of section 859 only if he can show that Dr. Maier fraudulently concealed the existence of his malpractice cause of action.[7] The same is true with respect to Dow's claims for assault and battery and intentional infliction of emotional distress The undisputed facts reveal no conduct or behavior by Dr. Maier that creates an issue of fact as to whether he took any action to prevent Dow from learning of any of his alleged causes of action.

With respect to Dow's cause of action for fraud, however, there are disputed issues for trial as to the application of §859. Specifically, if Dr. Maier misrepresented the addictive nature of the medication he prescribed, there is a disputed issue as to whether Dow discovered that misrepresentation (and his fraud cause of action therefore accrued) only after Dow had become mentally ill.[8] This assumes that Dow's fraud claim is not barred as a matter of law, a subject discussed in more detail below.

---

[7] Dr. Maier contends that §859 does not apply to causes of action for medical malpractice because of 24 M.R.S.A. §2902's rejection of a discovery statute for medical malpractice except in foreign object cases. Dasha, however, suggests that both §853 and §859 are potentially available in medical malpractice cases -- if the requirements of those sections are met. See 665 A.2d at 996.

[8] It appears to be undisputed that Dow became aware of the addictive nature of the medication prescribed by Dr. Maier at least by 1984, when he checked into Westbrook Hospital and perhaps as early as late 1982. See Dow Dep. 9/25/98 at 56 (conversation with Dr. Savadove); Savadove notes of 10/82; Dow Dep. 9/25/98 at 57 (conversation with Dr. Maier). Because he did not file suit within six years of either of those dates, Dow cannot rely upon 14 M.R.S.A. §859 independently of §853. However, if Dow was mentally ill at the time his cause of action for fraud accrued -- i.e. when he discovered the fraud -- and remained mentally ill until six years before he filed suit, then Dow could potentially benefit from a combination of Sections 853 and 859 and his fraud claim would be preserved.

6

3.	Fraud Claim

Dr. Maier argues in the alternative that Dow's fraud claim -- even if it is not barred by the statute of limitations because of §859 -- fails to state a claim because the alleged misrepresentation was not made in connection with a business transaction. See Restatement (Second) of Torts §552 (1977) (negligent misrepresentation must be based on false information supplied for guidance in a business transaction). Dow responds that there is a disputed issue for trial as to whether the alleged misrepresentations were made for guidance in a business transaction because there is evidence that the medication prescribed by Dr. Maier was intended to allow Dow to function in his business. Assuming that this is correct, however, this would not constitute information supplied "for guidance in a business transaction" within the meaning of §552. See id. comment a (section applies to information supplied "for use in commercial transactions").

In the alternative, Dow argues that this case falls within the confines of Restatement (Second) of Torts §311 (1965) rather than within section 552. Section 311 contains no requirement that a business transaction be involved and applies to negligent misrepresentation relating to the risk of physical harm, rather than within section 552. The court agrees that section 311 is potentially applicable here. Indeed, comment b to §311 specifically references the physician-patient situation. Moreover, Dow is also alleging that Dr. Maier fraudulently misrepresented the medication in question to be non-addictive, and there is also no requirement of a business purpose

7

with respect to fraudulent misrepresentation.  See Restatement (Second) of Torts §525 (1977).

The remaining question is whether a negligent misrepresentation -- as opposed to a fraudulent misrepresentation -- qualifies as fraud for purposes of 14 M.R.S.A. §859.  Because fraudulent misrepresentations certainly qualify for tolling under 859, summary judgment on Dow's misrepresentation claims are denied and the court will reserve for a later time the issue of whether a negligent misrepresentation claim pursuant to section 311 of the Restatement can be tolled under §859.

4.    Assault and Battery

The undisputed facts establish that Dow's claims in this action arise from the allegedly wrongful prescription of addictive medication and the alleged misrepresentation by Dr. Maier that the medication was not addictive.  Even assuming that Dow can prove that Dr. Maier's alleged actions were wrongful, those actions do not constitute assault or battery.  See Woolley v. Henderson, 418 A.2d 1123, 1133 (Me. 1980).  Although Dow contends that Woolley leaves open the possibility that medical treatment that differed significantly  from the treatment to which a patient consented can still constitute battery, that is only true if there is a surgical operation or some other contact that can form the basis of  battery.  In this case, where there was no surgical operation, there was no contact or touching that could constitute battery.  See Trogun v. Fruchtman, 207 N.W.2d 297, 312-13 (Wis. 1973), quoted with approval in Downer v. Veilleux, 322 A.2d 82, 90 (Me. 1974).

8

Summary judgment is therefore granted to Dr. Maier on Dow's assault and battery claims.

5.    Intentional Infliction of Emotional Distress and Punitive Damages

The Law Court has held that, in appropriate cases, summary judgment may be granted dismissing claims for intentional infliction of emotional distress and claims for punitive damages if the court concludes that the alleged conduct does not meet the applicable requirements for those claims as a matter of law. See, e.g., Barnes v. Zappia, 658 A.2d 1086, 1090 (Me. 1995) (upholding summary judgment dismissing claim of intentional infliction of emotional distress); Gayer v. Bath Iron Works, 687 A.2d 617, 622 (Me. 1996) (upholding summary judgment dismissing punitive damage claim). For purposes of summary judgment, the court concludes that there is a disputed issue of fact as to whether Dow was subjected to emotional distress that was so severe that no reasonable man could be expected to endure it.

However, taking all admissible evidence and construing it in plaintiff's favor, the court also concludes that although there are disputed issues as to whether Dr. Maier's alleged conduct here constituted malpractice and misrepresentation, Dow has not demonstrated the existence of disputed issues for trial as to whether Dr. Maier intentionally or recklessly inflicted severe emotional distress upon Dow and as to whether Dr. Maier's conduct was so extreme and outrageous as "to exceed all possible bonds of decency" such as would be regarded as atrocious and utterly intolerable in a civilized community. Barnes, 658 A.2d at 1090 (internal quotation omitted). Similarly, on the punitive damages claim, Dow has not advanced

9

evidence generating a disputed issue for trial as to whether Dr. Maier was motivated by actual ill will or whether his conduct was so outrageous that ill will can be implied. Gayer, 687 A.2d at 622.

If the evidence offered in opposition to summary judgment would not be sufficient to withstand a motion for judgment as a matter of law at trial, summary judgment should be granted. E.g., Harkness v. Fitzgerald, 1997 ME 207, ¶5, 701 A.2d 370, 372. In this case the only evidence offered by plaintiff that would conceivably show that Dr. Maier's alleged conduct was sufficiently outrageous to allow recovery for intentional infliction of emotional distress or to permit an award of punitive damages is his expert's speculation that Dr. Maier's medical treatment could conceivably have been motivated by the desire to have his bills paid. Nelson Dep. 107. Dr. Nelson's speculation to this effect would not be admissible at trial.

The entry will be:

Defendant's motion for summary judgment granted with respect to claims for assault and battery, intentional infliction of emotional distress, and punitive damages. Denied in all other respects.

Dated: March 13, 2000

Thomas D. Warren
Justice, Superior Court

10

Date Filed __08-14-97__  __CUMBERLAND__  Docket No. __CV-93-276__
County

Action __PERSONAL INJURY__

DONALD L. GARBRECHT
LAW LIBRARY

MAR 20 2000

DONALD DOW                 JAMES H. MAIER, M.D.

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| WILLIAM McKINLEY ESQ<br>PO BOX 9711   780-6789<br>PORTLAND ME  04104-5011 | MALCOLM LYONS, ESQ<br>~~JOHN C. NIVISON ESQ~~. 622-6311<br>77 WINTHROP ST, AUGUSTA ME 04330-5552 |

| Date of Entry | |
|---|---|
| **1997**<br>Aug. 14 | Received 08-14-97:<br>Complaint Summary Sheet filed. |
| "    " | Complaint with Exhibit A filed.  (SEALED PER ORDER OF 9/24/97) |
| Sept. 04 | Received 09/04/97:<br>Defendant's Answer filed. |
| Sept. 10 | Received 09-10-97:<br>Acceptance of Service filed.<br>James Meier, M.D. to John Nivison, Esq. served on 09-03-97. |
| Sept. 16 | Received 09/16/97:<br>Letter from William McKinley Esq. to the Clerk's office requesting a status conferance filed. |
| Sept. 25 | On 09-24-97:<br>Conference held on Procedure.<br>Saufley, J. Presiding<br>No Record Made |
| Sept. 25 | Received 09-24-97:<br>Pretrial Scheduling Order filed. (Saufley, J.)<br>Wherefore the entry shall be:  The parties shall designate experts and provide 26(b)(4) information as set out herein.  Discovery shall close on August 3, 1998.  The orders attached hereto are incorporated herein |
| Sept. 25 | Received 09-24-97:<br>Expedited Pretrial Order filed. (Saufley, J.)<br>"Expedited Pretrial order filed.  Discovery to be closed by 8/3/9⅞.<br>Case ordered placed on the jury trial list 30 days after close of discovery.  By order of the presiding justice, the Expedited Pretrial Order is incorporated by reference in the docket with attached incorporated Order Supplementing Expedited Pretrial Order."<br>On 09-25-97:  Copy mailed to John Nivison and William McKinley, Esqs. |