Joseph A. DASHA, III, by his guardian and next friend, Margaret S. DASHA, Plaintiff,

v.

MAINE MEDICAL CENTER, Defendant.

Civil No. 93–343–P–C.

United States District Court,
D. Maine.

Jan. 8, 1996.

David M. Rogers, Campbell & Associates, Professional Corporation, Boston, MA, Robert Furbish, Terrence Garmey, Smith, Elliott, Smith & Garmey, Portland, Maine, Michael J. Waxman, South Portland, Maine, for Plaintiff.

Gerald F. Petruccelli, Petruccelli & Martin, Portland, Maine, for Defendant.

*MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

GENE CARTER, Chief Judge.

Plaintiff Joseph A. Dasha, III, sues Defendant Maine Medical Center to recover for

injuries caused by the misdiagnosis and consequent mistreatment of his brain tumor. Complaint (Docket No. 1). Defendant has moved for summary judgment based entirely on its affirmative defense that Plaintiff commenced this action after the three-year statute of limitations for medical malpractice actions had lapsed. 24 M.R.S.A. § 2902 (1990); Motion for Summary Judgment (Docket No. 3). This Court found the answer to the following question to be both potentially dispositive of Defendant's motion and undetermined by Maine precedents:

> Whether equitable principles estop a defendant from pleading the statute of limitations as a bar to a medical malpractice action when that defendant's alleged negligent treatment of a plaintiff's brain caused damage such that the plaintiff was deprived of the ability to recognize and file a timely cause of action?

Certificate of Question of State Law (Docket No. 13) at 7. This Court, therefore, certified that question to the Supreme Judicial Court of Maine. *Id.* The Law Court answered that question in the negative. *Dasha v. Maine Medical Center,* 665 A.2d 993 (Me. 1995). Plaintiff nevertheless seeks now to avoid summary judgment by challenging the constitutionality of the Law Court's interpretation of § 2902. Because this Court cannot find constitutional infirmity in that interpretation of § 2902, Defendant's Motion for Summary Judgment must be granted.

## I. MATERIAL FACTS

The facts of this case are not disputed. On or about June 13, 1988, Dr. Joseph F. Stocks, a pathologist at Maine Medical Center ("MMC"), diagnosed Joseph Dasha with a fatal brain tumor, glioblastoma multiforme. Plaintiff's Statement of Material Facts (Docket No. 7) ¶ 2 ("PSMF"). Mr. Dasha soon underwent brain surgery by which some or all of the brain tumor was removed. PSMF ¶ 3. Based on the diagnosis and prognosis provided by MMC, Mr. Dasha was advised to undergo an aggressive series of radiation treatments for the purpose of prolonging his life. The prognosis for survival associated with glioblastoma multiforme is about six months if untreated and eighteen months to two years if treated. Deposition

of Dr. Lester Stephen Adelman at 13 ("Adelman"). Mr. Dasha agreed to undergo radiation treatment, which began on July 5, 1988, and ended on August 16, 1988. PSMF ¶¶ 4, 5. During that time, Mr. Dasha received thirty treatments, exposing him to a total of approximately 6000 rads of external beam radiation. PSMF ¶ 5. Slides of the tumor were sent for classification to Dr. Lester Stephen Adelman, a neuropathologist at the New England Medical Center, who confirmed on August 1, 1988, the initial diagnosis of Plaintiff's tumor and his prognosis for survival. Adelman at 56.

During and immediately after the treatment, Dasha was competent and in control of his faculties. Notice of Claim (Docket No. 7) Exhibits AA, AAA. Shortly thereafter, however, his abilities declined, resulting in his eventual incompetence due to severe brain damage. *Id.* The parties have agreed, for the purposes of the present motion for summary judgment, that Mr. Dasha has been mentally incompetent since March 1989. PSMF ¶ 5. On March 2, 1989, Mr. Dasha executed in favor of his sister, Margaret S. Dasha, a power of attorney, which explicitly authorizes her to sue on her brother's behalf. PSMF ¶ 8; Power of Attorney (Docket No. 7) Exhibit B at 2.

In November 1990, Dr. Adelman reviewed the tissue sample of Mr. Dasha's tumor at the request of Dr. Barbara Shapiro who was then treating him. PSMF ¶ 9. As a result of that review, Dr. Adelman revised his earlier diagnosis, now identifying the tumor as the relatively benign ganglioglioma. *Id.* Dr. Shapiro informed Ms. Dasha of the revised diagnosis on March 1, 1991, approximately two years and nine months after the misdiagnosis. Deposition of Dr. Barbara Shapiro at 34–35, 64–65. By this time, Mr. Dasha's brain damage was so severe that he was unable to understand either the nature of the cause of his injury or the legal implications of the original misdiagnosis. PSMF ¶ 7.

On May 9, 1992, three years and eleven months after the misdiagnosis, Ms. Dasha notified MMC of her intent to file suit on behalf of her brother. Notice of Claim (Docket No. 7) Exhibit AAA. On July 22,

1992, Mr. Dasha was declared legally incompetent and his sister was appointed his legal guardian. Decree of Guardianship (Docket No. 7) Exhibit C. The parties agree that this action was not filed within the three-year limitation period prescribed by § 2902.

## II. DISCUSSION

 Despite the prior assessment that the Law Court's answer to the certified question would prove dispositive of Defendant's motion, Plaintiff now contends that the answer generates a new, federal constitutional issue.[1] Plaintiff claims that the Law Court's failure to find an equitable "safety valve" in this case brings the statute into conflict with the Due Process Clause of the Fourteenth Amendment.[2] Though the proper starting point of the due process analysis in this case is somewhat unclear, the standard of review on any starting point is the same deferential test for mere rationality.[3] This standard of review is consistent with the general principles articulated in *Wilson v. Iseminger*, 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804 (1901), for determining the constitutional adequacy of a statute of limitations, even though the statute in that case was not challenged on due pro-

cess grounds. There the Court indicated that such statutes are constitutional " 'if a *reasonable time* is given for the commencement of an action before the bar takes effect.' " *Id.* at 63, 22 S.Ct. at 575 (emphasis added) (quoting *Terry v. Anderson*, 95 U.S. 628, 632–33, 24 L.Ed. 365 (1877)). The Court also noted that "all statutes of limitation must proceed on the idea that the party has *full opportunity* afforded him to try his right in the courts." *Wilson*, 185 U.S. at 62, 22 S.Ct. at 575 (emphasis added).

 Plaintiff cites, and research has revealed, no case in which a federal court has applied these principles to strike down a state statute of limitations on the exercise of a state tort right. In fact, the Court of Appeals for the First Circuit has found to be consistent with federal due process an earlier version of Maine's medical malpractice statute of limitations which provided a plaintiff only two years in which to sue from the date of the wrongful act. *Clark v. Gulesian*, 429 F.2d 405, 406 (1st Cir.1970). Plaintiff does cite as persuasive authority, however, two cases in which state supreme courts, citing *Wilson*, have found state statutes of repose inconsistent with state due process require-

---

1. Although there is some question as to whether Plaintiff has, by now, waived his right to raise this claim, Defendant concedes the propriety of addressing the claim anyway in order best to serve the interest of finality. Defendant's Memorandum in Opposition to Plaintiff's Supplemental Opposition to Summary Judgment (Docket No. 18) at 10.

2. Plaintiff also invites this Court to revisit the issue of whether § 2902 violates Article I, Section 9 of the Maine Constitution, the Open Courts Clause. This Court declines to do so. Plaintiff claims reconsideration is warranted in light of what Plaintiff takes to be the Law Court's holding in *Dasha*, "that the Legislature has precluded any equitable intervention no matter how egregious the circumstances which deny access to the judicial process." Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket No. 17) at 10. Plaintiff plainly overstates the scope of the Law Court's holding in *Dasha. See Dasha*, 665 A.2d at 995–96. Moreover, even if that characterization of *Dasha* were accurate, the complete unavailability of equitable intervention would not change the open courts analysis on the facts of this case. Notwithstanding any legal rule that may have been articulated in *Dasha*, it remains true that even "[i]f section 2902 may have the

effect of foreclosing access to the courts in some case, it certainly did not have that effect in this case." Order Certifying Question of State Law to the Law Court (Docket No. 12) at 5.

3. In *In re San Juan Dupont Plaza Hotel Fire Litigation*, 687 F.Supp. 716, 733–34 (D.P.R. 1988), the district court treated a Puerto Rico statute of limitations on a tort right as a deprivation of property to be evaluated for consistency with procedural due process as per *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1984). *See also McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1984) (applying procedural due process analysis to state-created employment rights, and suggesting state-created tort rights warrant similar analysis). On the other hand, in *Duke Power Company v. Carolina Environmental Study Group*, 438 U.S. 59, 82–83, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978), the Supreme Court treated a Congressional limitation on liability as a legislative balancing of economic interests to be presumed consistent with due process absent a showing of arbitrariness or irrationality as per *Ferguson v. Skrupa*, 372 U.S. 726, 731–32, 83 S.Ct. 1028, 1031–32, 10 L.Ed.2d 93 (1963). In any event, neither party has urged this Court to apply any form of heightened scrutiny in its due process analysis of § 2902.

ments. *Garcia on Behalf of Garcia v. La Farge*, 119 N.M. 532, 893 P.2d 428 (1995); *Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709 (1987).

In this case, the statute of limitations at issue provides a medical malpractice plaintiff three years to sue from the date of accrual, which is the date of the wrongful act. 24 M.R.S.A. § 2902. On its face, § 2902 is consistent with federal due process requirements because it is procedurally more generous than the statute upheld in *Clark*[4] As applied to Plaintiff Dasha, § 2902 also passes constitutional muster. Three years from the date of the wrongful conduct is no less a "reasonable time" or "full opportunity" for Mr. Dasha than it is for any other medical malpractice plaintiff. There are at least four reasons why this is so, notwithstanding Mr. Dasha's mental incapacity during part of that time.

First, Mr. Dasha's mental incapacity began in the same month as his sister's legal capacity, by virtue of the power of attorney he bestowed on her, to sue on his behalf. Therefore, either he or his sister could have brought the action throughout the entire three years, the same "reasonable time" and "full opportunity" as any other malpractice plaintiff. Second, Mr. Dasha's diminished mental capacity to discern and report his worsening injuries did not correspondingly diminish his capacity to determine that those injuries were the result of medical malpractice. Mr. Dasha never had the capacity to make that determination in the first place, even at the height of his mental powers, because only a doctor trained in distinguishing benign and malignant brain tumors has that capacity. Nor is there any suggestion or evidence that Mr. Dasha's mental incapacity postponed that determination by his doctors; Mr. Dasha's worsening symptoms were not potential indicators of malpractice, such that his inability to discern and report them might delay reevaluation. Third, the Dashas did, in fact, discover the malpractice within three years of the wrongful act, but did not commence this action until over fourteen months later, still within a year after the statute had run. Fourth, the two state cases Plaintiff cites involve statutes that are structured differently from § 2902 and that operate in those cases to bar plaintiffs' claims within a year of accrual. *Garcia*, 893 P.2d at 437–38 (barred eighty-five days after accrual); *Gaines*, 514 N.E.2d at 715–16 (barred six and one-half months after accrual). In this case, by contrast, § 2902 afforded the Dashas three years after accrual, including over three months after discovery, to file this action.

In sum, the Dashas' untimely filing of this action was not the result of any mental or legal incapacity, but of their tragically late discovery of the malpractice. To the extent that the statute generates a harsh result in this case, then, it is for lack of a discovery rule rather than for lack of an exception when a plaintiff's injury impedes mental capacity. Indeed, such an exception would not help Mr. Dasha on these facts. Plaintiff does not, nor could he legitimately, contend that this Court should find § 2902 unconstitutional for lack of a discovery rule because statutes without such a rule have routinely been upheld. *See, e.g., Clark*, 429 F.2d at 406. In expressly limiting the application of the discovery rule, the Maine legislature undoubtedly considered the enormous individual human costs of cases just such as this, but decided nonetheless that those costs are outweighed by the pressing need to control health care costs for all. *See Choroszy v. Tso*, 647 A.2d 803, 806–07 (Me.1994); *Maine Medical Ctr. v. Cote*, 577 A.2d 1173, 1176–77 (Me.1990). If that difficult policy decision is to be reconsidered at all, it should be done by the Maine legislature and not this Court. This Court finds, therefore, that § 2902, both on its face and as applied to these facts, does not violate the Due Process Clause of the Fourteenth Amendment because the statute provided Plaintiff Dasha a "reasonable time" and "full opportunity" to bring his malpractice suit.

### III. CONCLUSION

Accordingly, it is *ORDERED* that Defendant Maine Medical Center's Motion for

---

4. Neither the statute in *Clark* nor § 2902 provides a tolling provision or other exception for plaintiffs whose injuries hinder their mental or legal capacity to sue the defendant who caused those injuries.

Summary Judgment be, and it is hereby, *GRANTED*.